## WEBB COUNTY v. BOARD OF SCHOOL TRUSTEES OF LAREDO.

### No. 1062. Decided December 23, 1901.

**1.—Pleading.**

Subject to the rule that every reasonable intendment is to be indulged in favor of the pleading, averments of doubtful meaning must be construed against the pleader. (P. 136.)

**2.—Same—Municipal Corporation—Acts of Officers.**

Where a petition charging a county with liability to an independent school district on account of revenues from funds derived through sale of county school lands, alleged that the "defendant and its officers," not specifying what officers, appropriated all such funds to the support of schools in other districts, the pleading must be taken to charge that such distribution was made by the county school superintendent, who was charged by the law with that duty, and not by the commissioners court, who had no control over such distribution. (Pp. 135-137.)

**3.—School Fund—Distribution—Liability of County.**

A county was not liable to an independent school district for the acts of the county school superintendent in distributing to other school districts the portion of available school funds derived from income of trust funds from sale of county school land, in disregard of the right of such independent district to participate in the distribution. (Pp. 137-139.)

**4.—Same—Commissioners Court—County as Trustee.**

The commissioners court, when they have paid to the county treasurer the income from the funds held in trust for schools, to be distributed as available school fund for the year, have discharged the trust of the county, and the county superintendent, in thereafter apportioning, acts as agent of the State and not of the county. (P. 139.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Webb County.

The action was by the independent school district of Laredo and its trustees, against Webb County, and judgment was rendered for defendant on demurrer. On appeal by plaintiffs the judgment was reversed and the cause remanded; and thereupon the county obtained writ of error on the ground that the case involved the construction and application of the Constitution of the State.

*E. A. Atlee,* for plaintiff in error.—A county, being one of the political subdivisions of the State, is intrusted with powers to be exercised for the general welfare of the public as a part of the sovereign power of the State, and is not responsible for the misfeasance or omission of duty of the county officers elected by the people, with reference to duties the performance of which is prescribed by general statute law; and the appellee is not responsible for the acts complained of in the pretended action of defendant.

It being made by general statute law the duty of county officers, elected by the people, to apportion the available county school fund in a manner directed by general statute law, for the faithful performance of which duty a bond is required of such officers, an action by a school district or the trustees thereof to recover a distributive share of such fund to which it would be entitled in a proper apportionment thereof, does not lie against the county, when such action is founded on the failure of said officers to properly apportion said fund, whereby the entire fund was apportioned and used in maintaining the public schools of the county outside of such school district and that district received no part of its share of the fund.

As to a duty enjoined by statute, the misfeasance of a county officer elected by the people, resulting in a loss to a school district of the county of its pro rata of the available county school fund, and in the use of said fund entirely in maintaining the public schools of the county outside of such district, can not be the foundation of a legal claim against the county as for money had and received and appropriated or converted to the use and benefit of the county.

Authorities: Rev. Stats., arts. 3891, 3902, 3929, 3929a, 3930, 3932, 3934; Harrison v. Columbus, 44 Texas, 418; Corsicana v. White, 57 Texas, 382; Whitfield v. Paris, 84 Texas, 431; Galveston v. Posnainsky, 62 Texas, 118; Story on Agency, secs. 319, 319b, 320, 321; Throop, Pub. Officers, sec. 593; Dillon, Mun. Corp., sec. 963; Mechem, Pub. Officers, secs. 849, 850; Tiedman, Mun. Corp., sec. 92; Cooley, Const. Lim., sec. 247; Downing v. Mason County, 87 Ky., 208; Fry v. County of Albemarle, 86 Va., 195; Lorillard v. Town of Monroe, 11 N. Y. (1 Kernan), 392; Martin v. Mayor of Brooklyn, 1 Hill, 545; City of Richmond v. Long's Admr., 17 Grat., 375; Young v. Board of Ed., 54 Minn., 385; Bank v. School Township, 1 N. Dak., 26.

A suit to recover a part of the available county school fund belonging to an independent school district, lies, if at all, in the name of the treasurer of such district, and not in the name of the trustees thereof; and the demurrer was property sustained. Trustees School Dist. v. Haas, 59 S. W. Rep., 830.

*J. F. Mullaly,* for defendant in error.—The obligation to do justice rests upon all persons, natural and artificial, and if a county uses for its own purposes money or property collected for others, the law, independent of any statute, will compel restitution or compensation. Marsh v. Fulton County, 10 Wall, 676; Chapman v. Douglas County, 107 U. S., 348; United States v. Bank, 96 U. S., 30; Louisiana v. Wood, 102 U. S., 294; Aldrich v. Bank, 176 U. S., 618.

While a county may not be responsible for the misfeasances, or wrongs, or negligences, or omissions of duty of its subordinate officers in the administration of offices created by statute and in the performance of duties enjoined by statute, whereby others are damaged and no corresponding benefit is enjoyed by the county, yet such rule does not apply to a case where the county through its officers appropriates to its own use money collected for the benefit of another. Same authorities.

The use by Webb County of money collected for the benefit of the independent school district of Laredo, for any purpose of its own, whereby it enjoyed the benefit of such money, was as much a conversion of the money as any conversion known to the law. Same authorities.

The right of action of interveners is against Webb County and not against its subordinate officers and their sureties, because the county, and not such officers, get the benefit of the use of the money claimed. Same authorities.

The county superintendent's bond being payable to the county commissioners court and their successors in office, and any recovery thereon becoming a part of the available school fund of the county, it is not within the power of interveners to maintain action thereon, and therefore such an action would afford them no relief. Rev. Stats., art. 3929b.

Article 7 of section 6 of the Constitution imposes upon counties (not their officers) the duty of administering their school funds arising out of lands granted them for educational purposes, as trustees; and makes the counties (not their officers) responsible for all investments of the proceeds of sales of such lands, and provides that the interest and other revenues of such lands shall be available fund. The county is the owner of the fund, in trust; as the principal of this fund can not be expended or impaired by the county, it is apparent that the trust is valueless except as it produces revenue, for the revenue is the only thing about it that can be enjoyed. If the county is the express trustee of the fund and responsible for its integrity, and

charged with the duty of making that fund productive, it inevitably follows that the county is equally the express trustee of the product of the fund and charged with the duty of applying it in the manner provided by law. If the proper application of the product of the fund was not intended, by section 6 of article 7 of the Constitution, to be safeguarded thereby as much as the principal of the fund itself, then said provision of the Constitution serves no useful purpose. With the utmost care it guards the safety and integrity of the principal of the fund upon the entire financial responsibility of the county (not the officers of the county and their sureties), and the plain intention is there manifested to thus provide a revenue which shall be available for school purposes. No such solicitude could have been felt by the framers of the Constitution for the preservation of the principal of the fund except to insure a revenue available for the specific purpose therein stated. The revenue being the object sought, it seems a reflection on the intelligence of such framers to say that they did not intend to safeguard with equal care its expenditure for the very purpose for which it was so created.

If this is the effect of the constitutional provision, then it is unimportant what county officers failed in their duty to apportion and pay over to defendant in error the part of the revenue due to the independent school district of Laredo, the county itself being the express trustee. If the subordinate county officers failed in their duty, the Commissioners Court, as the general supervising and auditing board of the county, could have required them to comply, and that court in failing to exact such compliance was equally at fault. Being a corporation, the county could as easily have performed its duty as express trustee for the distribution of the fund through the agency of its officers, just as every other act done in its name is performed. The defense relied upon by plaintiff in error is, that the trustee's officers having spent the trust funds for the benefit of the trustee, there is no money left and the trustee is therefore not liable to the beneficiary.

GAINES, Chief Justice.—This action was originally brought by the city of Laredo against the county of Webb to recover the proportion of the available school fund of the county due to the independent school district of the city of Laredo for a series of years before the filing of the suit. A demurrer to the petition was interposed for the want of proper parties and the trustees of the independent school district intervened, setting up the same cause of action and claiming a recovery thereon. The court sustained the demurrer both to the petition of the plaintiff and to the intervening petition of the board of trustees, and, the parties declining to amend, judgment was entered for the defendant. The board of trustees alone appealed. The Court of Civil Appeals reversed the judgment and remanded the cause.

The question is, did the petition in intervention set up a good cause

of action against Webb County? The allegations of that petition show that Webb County was the owner in trust of certain lands for the benefit of its common schools and also of a fund, the proceeds of the sale of such lands, and that from the year 1884 up to the time of bringing the suit, there had been received by that county an annual income therefrom, which properly belonged to the available school fund of the county, and that no part of the same had been apportioned or paid to the independent school district of Laredo for the maintenance of the public schools under its charge. The share due to the independent school district is alleged to be $6028.71, for which judgment was asked against the county.

The wrong alleged in the petition is set forth in the following language: "That defendant and its officers, not regarding their duty in the premises, neglected throughout said period of time to make any apportionment of such funds whereby any part thereof was apportioned to said independent district, and neglected to pay over to the treasurer or any other officer of said independent district any part of said revenues so payable for its use, and that no part of said money has ever been used for the benefit of such independent district, and the same remains due and wholly unpaid.

"Interveners say that the defendant, throughout said period of time, expended all of such trust revenues so received by it in maintaining schools in said county outside of said independent district, paying teachers' salaries, school house rent, buying school furniture, supplies, etc., and for incidental expenses connected with such schools, and was thereby enabled to maintain its said schools without levying or collecting any special tax therefor, and never levied or collected any such school tax, and that said money does not now exist in the treasury of defendant to the credit of its school fund; wherefore interveners say that defendant wrongfully converted said money due said independent district to its own use, and received the benefit thereof, and thereby became justly indebted and bound to pay to said independent district the said sums of money amounting in the aggregate to $6028.71." Interveners also alleged, "that it would be idle and useless to sue the county superintendent of public instruction of defendant county to compel him to apportion such revenues so collected during such time, according to the provisions of Revised Statutes, article 3934, or to compel him to approve any warrant or draft on the county treasurer therefor, and it would also be idle and useless to sue the county treasurer of defendant county to compel him to pay any such draft or warrant, because the said funds have long since been converted by defendant and spent by it for its own use and benefit and do not now exist under the control of such county treasurer; wherefore, interveners say that said county superintendent and county treasurer are neither necessary nor proper parties to this proceeding."

The chief difficulty in disposing of the case arises, in our opinion, from the vagueness of these allegations.

In order to be called upon to make answer to the suit, it is clear that the defendant was entitled to be apprised by the petition what particular officer or officers were guilty of the wrongs for which it is sought to be held liable. Hence, if a special demurrer had been interposed to the averments first quoted on the ground that they were vague and indefinite, it should have been sustained. But the demurrers, though they assign special reasons why they should be sustained, are in effect general. Such being the case, we must, under the rules, indulge every reasonable intendment in favor of the pleading. But, subject to this rule, averments of doubtful meaning must be construed against the pleader. The averment that "defendant and its officers * * * have neglected throughout said period of time to make any apportionment of such funds" leaves the court to conjecture what officers are meant. A failure to do a duty can not be imputed from the allegations in a pleading when such failure is not charged either by express averment or by necessary implication; and in this case especially it is not to be inferred that it was the intention of the pleader to charge that the Commissioners Court failed to make an apportionment, since the statute devolves that duty upon the county superintendent and not upon that body. Rev. Stats., art. 3934. The duty being imposed by law upon the superintendent of public schools of the county, it is to be presumed from the averments that he is the officer for whose misconduct the county is sought to be held liable.

We also think the subsequent allegation "that the defendant, throughout said period of time, expended all of such trust revenues so received by it in maintaining schools in said county outside of said independent district" is to be construed in connection with the foregoing, and that so construed, it is to be implied that it is the county superintendent who is charged with the misappropriation of the funds. This construction is borne out, in part at least, by the subsequent allegations which assert reasons for not bringing suit against the superintendent and the county treasurer.

Besides, unless the allegation "that the defendant" misapplied the funds be construed in connection with the next preceding averment, we doubt whether it can be given any effect whatever. The county, being a quasi corporation, can only act through some officer or body authorized by law to act for it. Hence to say that the county did or failed to do an act is to state a mere conclusion of law. The averments should "be of the facts which constitute the cause of action in the given case, and not merely statements of the evidence by which the cause of action, if stated, might be maintained, or of conclusions derived from the evidence." Gray v. Osborne, 24 Texas, 157. In the case quoted from, the plaintiff alleged that the defendants were indebted to him by a certain promissory note, a copy of which was set out in the petition; but did not allege that the defendants executed the instrument, and it was held that a general demurrer should have been sustained to the petition. In Sneed v. Moodie, 24 Texas, 159,

there was no assignment of error upon a similar ruling of the court, but the error was held fundamental and the judgment was reversed.

Giving to the allegations of the petition of interveners their broadest intendment, we think the most that can be allowed to them, under proper rules of pleading, is that they seek to hold the defendant county liable for the failure of the officer charged with the apportionment of the special school fund of the county to set apart to the independent school district of Laredo its proper share of such fund. So treating the averments, the question then is, is the county liable for the failure of the county superintendent to properly apportion the fund; and we think this question must be answered in the negative.

Our organic law, in the article devoted to the subject of public education, contains this emphatic declaration: "A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools." Const., art. 7, sec. 1. This devolves the duty of establishing and maintaining public free schools upon the Legislature, and shows that the function of such establishment and maintenance was to be performed by state agencies. Sections 2 and 5 of the same article provide that certain funds and property, including one-half of the unappropriated public domain, shall constitute a permanent free school fund. Section 5 also declares, in effect, that the annual income derived from the permanent fund, together with the tax provided for in section 3, shall constitute the available school fund of the State, by which is meant the fund which may be appropriated annually to the maintenance of the schools.

Section 6 of the article reads in part as follows: "All lands heretofore or hereafter granted to the several counties of this State for educational purposes are of right the property of said counties respectively to which they were granted, and title thereto is vested in said counties, and no adverse possession or limitation shall ever be available against the title of any county. Each county may sell or dispose of its lands in whole or in part, in manner to be provided by the commissioners court of the county. * * * Said lands and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; said proceeds to be invested in bonds of the United States, the State of Texas, or counties in said State, or in such other securities and under such restrictions as may be prescribed by law; and the counties shall be responsible for all investments; the interest thereon and other revenue, except the principal, shall be available fund." That the several funds so provided for the respective counties were to supplement the portion of the general available fund of the State which should be set apart to the respective counties and to be appropriated solely to the support of the schools established by the State, is made clear by the declaration that "the lands and proceeds, when sold, shall be held by said counties alone

as a trust for the benefit of public schools therein." The counties are mere trustees and the public free schools are the beneficiaries.

Section 8 of the article reads as follows: "The Governor, Comptroller, and Secretary of State shall constitute a board of education, who shall distribute said funds to the several counties, and perform such other duties concerning public schools as may be prescribed by law."

The legislation for the establishment and maintenance of the public schools provided for the division of the counties into school districts and school communities. They also devolved the duties of superintendence of such schools upon the county judges of the respective counties, but also authorized the commissioners court of such county to create the office of county superintendent for such county and to provide for his election at each general election. It was also provided that the county superintendent, in case the office was created, should perform the duties with reference to the public schools which were prescribed for the county judge. Article 3931 of the Revised Statutes provides: "The county judge, or the county superintendent, if there be one, shall have, under the direction of the state superintendent, the immediate supervision of all matters pertaining to public education in his county," etc. The duties of the county superintendent or county judge, as the case may be, with reference to the apportionment of the available school funds, are declared in article 3934 of the Revised Statutes. It reads as follows: "The county superintendent, upon the receipt of the certificate issued by the board of education for the State fund belonging to his county, shall apportion the same to the several school districts (not including the independent school districts of the county), making a pro rata distribution as per the scholastic census, and shall at the same time apportion the income arising from the county school funds to all the school districts, including the independent school districts of the county, making a pro rata distribution as per scholastic census."

In article 3965 of the Revised Statutes it is provided that "the treasurers of the several counties shall be treasurers of the available public free school fund, and also of the permanent county school fund for their respective counties."

Such are the laws by which, as we conceive, the question presented in this case must be determined.

We will first inquire as to the duty devolved upon the respective counties with reference to their special school funds by section 6 of article 7 of the Constitution. As we have said, they hold these lands and the principal of the proceeds of these sales in trust for the benefit of the State schools in the counties; and it may be that they are bound to make good any loss which may result from an investment of such proceeds. As to what they shall do with the available proceeds of such fund the Constitution does not prescribe. This was left for the determination of the Legislature; and it is manifest from article 3965,

quoted above, that it was the intention of the lawmakers that the income of the fund should be paid to the county treasurer for the maintenance of the schools for the current year. In our opinion, when the commissioners court, who are made by the organic law the executive board for administering the affairs of the county, have done this, they have discharged the liability of the county for that fund. It is expressly made the duty of the county superintendent, whenever there is one, to make the apportionment among the school districts and communities of the county. In the performance of that duty, he is not subject to the control of the commissioners court; on the contrary, his administration of "all matters pertaining to public education in his county" is expressly made subject to "the direction of the State Superintendent."

In the case of White v. The City of San Antonio, 60 Southwestern Reporter, 426, notwithstanding the hardship of the result, we held that the city was not liable for the conduct of its health officer in making a pesthouse of the plaintiff's hotel,—for the reason that the functions the officer was called upon to perform were in the interest of the public at large and not for the special interest of the city, and that therefore he was acting for the State and not for the city. For a stronger reason we must hold that a county can not be held responsible for the failure of the county superintendent to make a proper apportionment of the available school fund of the county. Though in a sense a county officer and though called "county superintendent," he is in fact the officer and agent of the State,—the State having assumed the function of maintaining public free schools for the education of the children throughout its domain, the counties being recognized with reference to that business merely as convenient subdivisions of territory and some of their officers as proper agents for the administration of affairs relating to the public free schools. Such officers, with respect to such affairs, act for the State and not for the county. This is the case even as to officers who in other respects are county officers in fact as well as in name. White v. San Antonio, supra; Johnson v. Hanscom, 90 Texas, 321.

The complaint here is that there was a failure to properly apportion the special available school fund of Webb County for certain years mentioned in the petition, whereby the independent school district of the city of Laredo received no part of such fund during such years. Since the apportionment was a function assumed by the State, to be discharged by an officer acting for it, we are of opinion that the county can not be held liable for his action. We are of opinion, therefore, that the trial court properly sustained the demurrer to the intervening petition of the trustees of the school district.

If the petition had charged that the commissioners court had diverted this fund to strictly county purposes, and that the county, in its quasi-corporate capacity, had the benefit of such diversion, we would have had a different question,—one to which the cases relied

upon in support of the petition would probably have been applicable. But we do not understand that the petition makes such a case.

The judgment of the Court of Civil Appeals is reversed and that of the District Court is affirmed.

*Reversed and judgment of District Court affirmed.*