FRED C. PABST ET AL. V. ROXANA PETROLEUM CORPORATION ET AL.

No. 6309. Decided April 3, 1935.
(80 S. W., 2d Series, 957.)

*Harris & Watkins, Jules Damiani* and *Stewarts,* all of Galveston, and *Stewart & DeLange,* of Houston for plaintiffs in error.

It was error to sustain demurrers to plaintiffs petition in that petition alleged sufficient specific acts, circumstances and conduct to show that defendant obtained a valid lease which it had no intention to develop, but was a part of a scheme to tie up the sulphur in the entire tract or dome so as to prevent its production, and by leasing adjoining property made it impossible for plaintiffs to produce sulphur therefrom without the consent of defendant, and then abandoned the property and permitted the lease to terminate. Cole Pet. Co. v. United States Gas & Oil Co., 121 Texas, 59, 41 S. W. (2d) 414; Delz v. Winfree, 80 Texas, 400, 16 S. W., 111, 26 Am. St. Rep., 755; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Texas, 454, 6 S. W. (2d) 1039, 60 A. L. R., 890.

It was error to sustain demurrers when petition showed that defendants failed to use reasonable diligence and good faith after the discovery of sulphur in large and paying quantities, to produce and market same, such failing resulting in damages to plaintiffs. Benavides v. Hunt, 79 Texas, 388, 15 S. W., 396; Grubb v. McAfee, 109 Texas, 530, 212 S. W., 464; Bates v. Georgia Fertilizer Co., 144 Tenn., 32, 229 S. W., 153.

*Thompson, Mitchell, Thompson & Young, Truman Post Young,* and *Clude P. Berry,* all of St. Louis, Mo., for defendant in error Raxana Pet. Corp., *John M. Corbett, Lewis Jeffrey, Ballinger Mills, Terry, Cavin & Mills, Williams, Neethe & Williams,* and *F. A. Williams,* all of Galveston, for defendant in error Texas Gulf Sulphur Company.

It was not error to sustain the general demurrer because no duty devolved upon defendants under the lease to produce sulphur. Stephens Co. v. Mid-Kansas Oil & Gas Co., 113 Texas,

169, 254 S. W., 290; Waggoner Estate v. Siegler Oil Co., 118 Texas, 509, 19 S. W. (2d) 27; Flato v. Weil, 4 S. W. (2d) 992; Texas & Pac. Ry. Co. v. Bayliss, 62 Texas, 573; Barry v. Screwman's Ben. Assn., 67 Texas, 254; Ewing v. Duncan, 81 Texas, 236.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

Fred C. Pabst and others, herein referred to as plaintiffs, brought this suit in the District Court of Galveston County against Roxana Petroleum Corporation and the Texas Gulf Sulphur Company, herein designated defendants, to recover damages. The case went to trial on the third amended original petition. This petition comprises 33 pages of the transcript, exclusive of its exhibits. The defendants presented a formal general demurrer to the petition, and a demurrer, general in its nature, to the effect that the petition had commingled a supposed cause of action for an alleged breach of contract and a supposed cause of action for an alleged tort, and it was impossible to determine from the petition whether plaintiffs were suing upon contract or tort. These general demurrers were sustained by the trial court, and the plaintiffs refused to amend. The Court of Civil Appeals affirmed the judgment of the trial court, Judge Graves dissenting. 51 S. W. (2d) 802.

It would make this opinion unreasonably long to even undertake to state in outline the substance of plaintiffs' petition. In view of the fact that most if not all of the substantial portions of same have been incorporated into the opinions by the Court of Civil Appeals, it is unnecessary to reproduce same here.

It will be observed that the Court of Civil Appeals, in effect, held that the petition was fatally defective because in violation of Article 1997 of the Revised Statutes, which provides that a pleading shall "consist of a statement in logical and legal form of the facts constituting the plaintiffs' cause of action;" and because in violation of Article 2003 which requires a petition to contain among other things "a concise statement of the cause of action." In the majority opinion of the Court of Civil Appeals it is said:

"Its numerous paragraphs are so confused, contradictory, and inconsistent, and so interspersed with argument of counsel and pleadings of evidence as to destroy it as a petition consisting of a statement in logical form of facts constituting any definite cause of action. It is by no means a logical statement of any definite statements of facts constituting a cause of action. We are unable to ascertain from the petition, with any

degree of certainty, upon what facts plaintiffs base their demand or demands for a recovery, and we have no doubt that the trial court was as much at a loss to discover such facts as we are. We think it fair to state that the petition may reasonably be construed as one attempting to present a suit in equity, an action at law for breach of contract, an action to enforce specific performance of contract, or an action for tort, without any alternative allegations. Averments undertaking to set up a cause of action should be certain and positive, and not left to argument or inference."

The court, however, goes further and holds that if plaintiffs' petition be treated as one attempting to allege an action for damages because of a conspiracy, it is fatally defective for several reasons. In his dissenting opinion Judge Graves does not disagree with the majority of the court on the proposition that the petition was not sufficient to charge a conspiracy, but does dissent on the ground that if all irrelevant, extraneous and argumentative language of the petition be disregarded there are enough allegations left (though considerably disjointed) from which there may be extracted an alleged cause of action for failure to reasonably develop the land for sulphur, with consequent damages to some extent, though the extent of the damages be not definitely alleged.

1 On motion for rehearing Chief Justice Pleasants demonstrates, according to our view, that if it be conceded that the petition sought to allege such a cause of action, it fails to show any damages, and is therefore insufficient as a basis for a cause of action upon that theory. For that reason, and for the further reason that we have concluded that plaintiffs had no intention of pleading a cause of action for failure to reasonably develop the land for sulphur under the lease, it is unnecessary to consider the petition further from that standpoint.

The fact, however, that the majority of the Court of Civil Appeals was unable to determine just what particular cause of action plaintiffs intended to assert, whether for damages on account of an alleged conspiracy, for specific performance, or for failure to reasonably develop the land for sulphur under the lease, and the fact that the dissenting judge was able, after sifting the pleading and correlating isolated and disjointed allegations, to extract only an alleged cause of action for failure to reasonably develop the land; and the further fact that we have reached the conclusion that plaintiffs did not primarily intend to assert a cause of action on the theory of failure to reasonably develop, but attempted to allege only a cause of

action predicated on a conspiracy,—all show the inadequacy of the petition to "state the cause of action with such a reasonable degree of certainty as would give full notice to the defendants of the character of the claim or demand made against them, so as to enable them to make their defense."

2   Plaintiffs, however, in effect assert that if the petition contained allegations of fact sufficient to furnish the essential elements of a cause of action, although stated in a confused, illogical and argumentative manner, nevertheless the complaints urged against it went only to form rather than substance, and could not be set up by a general demurrer alone.   They invoke the rule that as against a general demurrer "if upon a fair, reasonable construction, giving to all ambiguities the reasonable interpretation most favorable to the pleading, there appears in it sufficient facts to show a legal right in the pleader, the general demurrer should be overruled."   But the trouble here is manifestly not a lack of allegations, nor altogether a meagerness of essential allegations, but a superabundance of doubtful allegations.   In such a case, even as against a general demurrer, all doubtful pleadings must be construed against the pleader.   Webb County v. School Trustees, 95 Texas, 131, 136. The complaint here goes beyond form to the substance of the pleading.   In Missouri the statutory requirements are almost identically the same as ours, and in the case of Sidway v. Missouri Land & Livestock Co., 163 Mo., 343, 63 S. W., 705, 714, the Supreme Court of that state very aptly put the rule which we think applicable in this language:

"And notwithstanding our statute requires pleadings to be liberally construed, etc., this only extends to the form of the pleadings, and does not apply to the fundamental requirements of a good pleading; and the pleader is not allowed now, any more than formerly, by inserting doubtful or uncertain allegations in a pleading, to throw upon his adversary the hazard of correctly interpreting its meaning."

However, without basing our opinion on this theory alone, we have carefully and diligently considered the pleading in the case, the brief of the plaintiffs in the Court of Civil Appeals, their motion for rehearing in that court, and the petition for writ of error, and have reached the definite conclusion that plaintiffs have attempted to plead an action for damages based on an alleged conspiracy, and that the petition construed as one for that purpose was subject to a general demurrer.

Plaintiffs' land consisted of the south one-half of a 50 acre tract, being a strip of land 441.1 feet wide by 2,407 feet in

length. The north one-half of the 50 acres had been previously leased to Follett. Plaintiffs' theory, so far as we are able to judge, appears to be this: That the defendant Roxana Petroleum Corporation sought and obtained a lease upon their 25 acre tract, not for the purpose of operating and developing it for sulphur, but for the purpose of tying it up until it could obtain undivided interests in the ownership of sulphur in surrounding lands, and then turn it back to plaintiffs undeveloped; and that by reason of its ownership of undivided interests in adjacent and adjoining lands it was made impossible for plaintiffs to produce sulphur from their tract. That it succeeded in carrying out this design, and surrendered the land back to plaintiffs, but under such conditions that they cannot realize anything from the sulphur thereunder. Consequently they have been damaged to the extent of the royalty on the entire amount of sulphur underlying their strip of land. Plaintiffs claim that this was all made possible by reason of the peculiar manner in which sulphur is produced from land. In their petition they allege:

"The one and only method of extracting and producing sulphur from structures such as Clemens Dome is to force superheated water under high pressure down into wells, drilled thereon and cased with iron pipe, and thereby through heating same, melt the sulphur under ground, and it is such sulphur so melted that flows as a liquid to the well and up through an iron pipe to the surface. Such melting of the sulphur takes place as far as the hot water spreads laterally under the ground from the well into which the water is pumped at high pressure. Such hot water so spreads to a distance of more than 1,000 feet from the well in every direction. There is no means of preventing such spreading of the water and no means of preventing the melting of the sulphur surrounding the well to a distance of more than 1,000 feet therefrom. There is no means by which the sulphur under the 25 acres described in said lease of September 21, 1925, can be extracted other than by pumping such heated water into wells drilled thereon and no means to prevent such hot water from flowing onto and invading the sulphur underlying the adjoining tracts of land and melting same and causing such sulphur to flow and come up into and be taken from the well so drilled on said Pabst 25 acres."

Reduced to its last analysis plaintiffs' case rests upon a claim that defendants, from the very inception of negotiations, designedly and wrongfully conspired and cooperated together for the sole purpose of injuring plaintiffs in the use and the en-

joyment of their property and making it impossible for them (plaintiffs) to ever produce the sulphur from their land, or for anyone else to do so. One of the means adopted for this unlawful purpose was the winning of the confidence of plaintiffs by taking a lease on their land, thus preventing them from contracting with anyone else during the time that defendants were acquiring undivided interests in the sulphur in surrounding lands by means of purchases, leases, etc. The very gist of plaintiffs contention is summarized in the conclusion of their brief in the Court of Civil Appeals in this language:

"The sole question in this case is whether Roxana as lessee occupies any position of confidence with respect to Pabst, and if so, whether during the time and while occupying such position of confidence or trust, it had the right to so arrange in undivided shares and interests the ownership of the sulphur in the surrounding premises also under lease to it in such way as to prevent Pabst from ever recovering the sulphur under his land, after the surrender and abandonment of the Pabst lease by Roxana. It is our contention that the Roxana (and the Sulphur Company in possesson under it) were in the nature of agent or trustee of the Pabst land, and while occupying and exploring the Pabst land under the lease from Pabst, were required to deal in good faith with Pabst and to refrain from practically forever tying up the Pabst sulphur by arranging undivided ownership in the sulphur underlying the surrounding lands."

3 It is our conclusion that the first 14 paragraphs of plaintiffs' petition had for their purpose the alleging of a situation showing a relation of confidence and trust between defendants and plaintiffs, from which it could be further alleged and argued that the actions of defendants in acquiring interest in the sulphur in surrounding lands was a breach of trust, and therefore wrongful and actionable. As plaintiffs expressly alleged that the acquisition of the lease in the first instance was a part of the conspiracy to destroy the value of their land, and then rested their case upon the alleged fact of a trust and fiduciary relationship which made the action of defendants wrongful, it is obvious that these allegations were not intended to form the basis of a cause of action for failure to reasonably develop the land for sulphur. This being true, it is evident that the dissenting opinion is without support in the pleading, and the only ground of error upon which the jurisdiction of this court is invoked is in the first assignment. We believe this assign-

60

ment within itself constitutes the best interpretation of the pleading, and for that reason we set it out here:

"The Court of Civil Appeals erred in affirming the judgment of the trial court sustaining general demurrers to the third amended original petition and dismissing the suit, in that the petition alleged specific acts, circumstances and conduct showing that the Roxana Petroleum Corporation, by misrepresentation, obtained a valuable sulphur lease from Pabst, without any intention of developing and producing the sulphur but as part of a scheme existing between it and the Texas Gulf Sulphur Company to tie up the sulphur in the entire dome and prevent its production, and while holding the lease, and leases on the surrounding property on the dome and being in a position to produce, and while under implied covenants to use reasonable diligence and good faith to develop, protect and produce, and after discovering sulphur in large and paying quantities, they, in furtherance of the same fraudulent scheme and conspiracy and for the purpose of preventing any sulphur from being produced from the dome, in violation of plaintiffs in error's contract rights and in violation of the anti-trust laws of the State, did so arrange the ownership of the sulphur rights on the surrounding property and on the entire dome, as to make it impossible for plaintiffs in error ever to produce sulphur from their property without the consent of defendants in error or their assigns, thereby destroying the value and the use of the sulphur to plaintiffs in error and damaging them to the extent of the royalties they would have received if the contract had been carried out, after which defendants in error wrongfully abandoned operations and permitted the lease to terminate, which allegations constitute a cause of action for the damages sustained."

For various reasons we conclude that plaintiffs' petition was not sufficient to allege a cause of action for damages growing out of concerted unlawful or wrongful acts. It is necessary to mention only two reasons, to-wit:

(a) Because the acts alleged to have been done by defendants were not under the circumstances alleged wrongful and actionable.

(b) Because of a lack of specific showing of damages or injury to plaintiffs as the direct and proximate consequence of the acts complained of against defendants.

These two reasons are considered together because the allegations showing the absence of these two essentials are the same.

4  Plaintiffs' tract of land was a long, narrow strip containing only 25 acres. It is expressly shown by the pleading that considered alone the sulphur thereunder could not have been produced either by plaintiffs or by defendants. There are manifestly two reasons for this. In the first place under the modern and scientific methods of sulphur production, the expense of producing the sulphur from such a limited acreage alone would be from a practical standpoint prohibitive. In the next place it is shown that under the super-heated steam pressure method adopted for bringing the sulphur to the surface of the ground production could not have been had from this narrow strip without encroachment on and damage to sulphur in other adjacent lands. These things being true, it is obvious that in this instance neither plaintiffs nor defendants could have successfully recovered the sulphur until a "community lease" was obtained or some arrangement made with surrounding land owners for production on a community basis. The allegations show that this is exactly what defendants attempted to accomplish. In two or more paragraphs of the petition plaintiffs allege that defedants requested and urged plaintiffs to join in such a community lease in order that production might be had from plaintiffs' land, but they consistently refused to make any such arrangement. In one place it is alleged: "Both of them representing to Fred C. Pabst that sulphur in paying quantities existed under the land of plaintiffs and under surrounding lands, and that it would be of benefit to plaintiffs to join in and execute such community lease for the said land of plaintiffs." Again it is alleged that defendants "did propose to said Pabst that if he would sign said proposed 'community sulphur lease' that he would be paid a large sum of money, but this the said Pabst also declined." Plaintiffs now complain that defendants, in their efforts to obtain such a community lease, acquired undivided interests in certain surrounding lands. Certainly defendants had a right to purchase interests in the sulphur in these adjacent lands. Especially is this so when it is not shown that this was not necessary in order to effectuate a community lease, and in the absence of express allegations that the acquisition of each of said interests was done with the unlawful purpose of injuring plaintiffs.

Thus it is demonstrated it seems to us that defendants were not either jointly or severally guilty of such wrongful and unlawful acts as subjected them to liability. In Delz v. Winfree, 60 Texas, 404, 16 S. W., 111, 26 Am. St. Rep., 755, the law in this state is stated to be as follows:

"A conspiracy cannot be made the subject of a civil action, although damages result, unless something is done which, without the conspiracy, would give a right of action. In other words, an act which, if done by one alone, constitutes no ground of action cannot be made the ground of such action by alleging it to have been done by and through a conspiracy of several; that the true test as to whether such action will lie is whether or not the act accomplished after the conspiracy has been formed is itself actionable."

5 What has been said likewise shows that plaintiffs have suffered no injury as a natural proximate consequence of the acts complained of on the part of defendants. No sulphur has been taken from plaintiffs' lands. Before the execution of the lease plaintiffs could not have produced sulphur from this 25 acres without a community lease. They show no good and sufficient reason why they are prevented from obtaining leases on surrounding lands in order to arrange a community lease. They do not allege that anyone else has been prevented from acquiring a lease on the surrounding lands by reason of the ownership of undivided interests in the defendants. They make no direct allegations that defendants have refused to join in such a lease. They do not allege that they could or would be able to effectuate a community arrangement by which they would produce the sulphur from their land had defendants not acquired interests in the sulphur in adjoining lands. In 12 Corpus Juris, page 631, it is said: "In alleging damage it is not sufficient simply to state that damages did in fact result; but the facts should be alleged from which the court can see, if the facts are true, that damages would naturally or possibly result from the act stated."

6 Apparently plaintiffs based their whole case upon the theory that defendants occupied towards them a relationship of confidence and trust which prevented the attempted acquisition of a community lease. We again call attention to the statement in their brief as follows: "The sole question in this case is whether Roxana, as lessee, occupied any position of confidence with respect to Pabst, and if so, whether during the time and while occupying such position of confidence or trust, it had the right to so arrange in undivided shares and interests the ownership of the sulphur in certain premises also under lease to it in such a way as to prevent Pabst from ever recovering the sulphur under his land." We do not agree that defendants occupied such a position of trust as prevented them from doing

the things alleged. On the contrary, assuming that they did occupy a fiduciary relationship, we think they could not properly perform the duties of that relationship without doing exactly what they attempted to do, to-wit, obtain a community lease. If in attempting to do so it became necessary or expedient to obtain interests in the sulphur in adjacent lands (which is not denied) they did nothing which would or should subject them to damages.

The judgment of the Court of Civil Appeals is in all things affirmed.

Opinion adopted by the Supreme Court, April 3, 1935.