

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

April 6, 1959

Dr. J. W. Edgar
Commissioner of Education
Texas Education Agency
Austin, Texas

Opinion No. WW-591

Re: Constitutionality of
Section 1, Subsection (4)a,
Article ⍺922-13, Vernon's
Civil Statutes, as amended,
relating to allotment of
exceptional children teach-
Dear Dr. Edgar:                          er units.

We have received your request relating to the consti-
tutionality of Section 1, Subsection (4)a of Article ⍺922-13,
Vernon's Civil Statutes, as amended, when considered in the
light of Subsection (4)b of the same Article. Subsection (4)a
is as follows:

"a. It is the purpose of this allotment
of exceptional children teacher units to
provide <u>competent educational services for
the exceptional children in Texas</u> between
and including the ages of six (6) and seven-
teen (17), for whom the regular school facili-
ties are inadequate or are not available.

"In interpreting and carrying out the pro-
visions of this Act, the words 'exceptional
children' wherever used, will be construed
to mean <u>physically handicapped</u> children and
<u>mentally retarded children</u>; the words 'physi-
cally handicapped children' wherever used,
will be construed to include any child of
<u>educable mind whose body functions or members
are so impaired that he cannot be safely or</u>
adequately educated in the regular classes of
the public schools, without the provision of
special services; and the words '<u>mentally
retarded children</u>' wherever used, <u>will be con-
strued to include any child whose mental condi-
tion is such that he cannot be adequately edu-</u>

cated in the regular classes of the public
schools. without the provision of special
services. The term 'special services' may
be interpreted to mean transportation;
special teaching in the public school
curriculum; corrective teaching, such as
lip reading, speech correction, sight
conservation and corrective health habits;
and the provision of special seats, books
and teaching supplies, and equipment re-
quired for the instruction of exceptional
children." (Emphasis added.)

Subsection (4)b of such Article reads as follows:

"(4)b. In any school district where the
parents of the required number of any type
of exceptional children, or types which
may be taught together, petition the Board
of Education of that district for a special
class, it shall be the duty of such Board
to request the State Commissioner of Educa-
tion to cooperate in the establishment of
such class or classes. The State Commis-
sioner of Education shall allot to such dis-
trict such number of exceptional children
teacher units to operate special or convales-
cent classes for exceptional children within
said district pursuant to rules and regula-
tions adopted by the State Board of Education.
Provided that districts not eligible for a
full exceptional children teacher unit may
enter, by vote of their respective Boards
of Trustees, into one cooperative agreement
to provide exceptional children teacher units,
such units to be approved by the County School
Superintendent. The teacher for an exceptional
children teacher unit shall be employed by
the Board of Trustees of the district in which
the class is to be taught, and such unit shall
be administered solely and exclusively by the
Superintendent of such district. The State
Commissioner of Education, upon certification
of such agreement by the County School Superin-
tendent, shall allot to each district party to
such agreement a fractional part of an exceptional
children teacher unit, provided that the sum of

such units so allotted shall not be greater
than the number of units for which said
district would be eligible provided no co-
operative agreement existed." (Emphasis added.)

Section 1 of Article VII of the Constitution of
Texas reads as follows:

"Section 1.  A general diffusion
of knowledge being essential to the pre-
servation of the liberties and rights
of the people, it shall be the duty of
the Legislature of the State to establish
and make suitable provision for the sup-
port and maintenance of an efficient sys-
tem of public free schools."

The Constitution of Texas provides, in other sections,
for the general maintenance, financing and operation of pub-
lic free schools and institutions of higher learning.

The constitutional question raised by your request,
in our opinion, concerns Section (4)a when considered in
the light of Section (4)b, relating to whether the Legisla-
ture is prohibited from imposing a duty upon the Board of
Education of a school district "to cooperate (with the Texas
Education Agency) in the establishment of such class or
classes" for the teaching of exceptional children, in Texas.

The Constitution requires a system of public free
schools to be maintained, and it is clear that the Legisla-
ture is vested with broad discretion insofar as providing
the details of how such is to be accomplished.

Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31, is a
landmark case concerning the nature of legislative control
over education in this State:

"  . . .

"The history of educational legislation
in this state shows that the provisions of arti-
cle  7, the educational article of the Constitu-
tion, have never been regarded as limitations by
implication on the general power of the Legislature
to pass laws upon the subject of education.  This

article disloses a well-considered purpose on the part of those who framed it to bring about the establishment and maintenance of a comprehensive system of public education, consisting of a general public free school system and a system of higher education. . . .

" . . .

" . . . the Constitution has been liberally construed with reference to the creation of institutions of higher education, and the same liberal rules should apply in determining the power of the Legislature with reference to the public school system. We cannot readily suppose that those who framed the Constitution would have left the Legislature with plenary power to create and maintain a system of higher education, and at the same time have intentionally so drawn the instrument that the legislative hands would be tied when changed condition rendered it desirable or necessary to give aid to the public school system in the manner outlined in the law before us.

" . . .

" . . . in ascertaining the power which the Legislature may constitutionally exercise with reference to the school system, we are not to limit or restrict that power, including the power to assign revenue derived from sources other than those specifically named, to the school fund, unless we find in the Constitution itself a specific limitation or one which arises by necessary implication from the language used. . . . (Emphasis by the Court.)

"Under our Constitution, public education is a division or department of the government, the affairs of which are administered by public officers, and in the conduct of which the Legislature has all legislative power not denied it by the Constitution. . . .

"Under the Constitution, our public schools are essentially state schools, and authority to control their operation, except as otherwise provided, is included among the power conferred upon the Legislature. Webb County v. School

Trustees, 95 Tex. 132, 135, 65 S.W. 878; Constitution, art. 7. . . .

"  . . . Since the Legislature has the
mandatory duty to make suitable provision for
the support and maintenance of an efficient
system of public free schools, and has the power
to pass any law relative thereto, not prohibited
by the Constitution, it necessarily follows that
it has a choice in the selection of methods by
which the object of the organic law may be ef-
fectuated.  The Legislature alone is to judge
what means are necessary and appropriate for
a purpose which the Constitution makes legiti-
mate.  The legislative determination of the
methods, restrictions, and regulations is
final, except when so arbitrary as to be viola-
tive of the constitutional rights of the citizen.
. . . .

"  . . .

"The word 'suitable' used in connection
with the word 'provision' in this section of
the Constitution, is an elastic term, depending
upon the necessities of changing times or condi-
tions, and clearly leaves to the Legislature the
right to determine what is suitable, and its de-
termination will not be reviewed by the courts
if the act has a real relation to the subject and
object of the Constitution.  . . ."

In our opinion, the Constitution of Texas does not
prohibit the Legislature from providing that exceptional
children, as defined by Section (4)a, shall be taught or trained,
to the extent that they may be, by the free public schools of
this State.  We are not concerned with whether such determina-
tion is in accordance with accepted educational policies.  We
do not imply that it is not in accord.  Our limited inquiry
here is only if it is prohibited.

It is true that the Legislature may not divert or
require the diversion of a public fund created for educational
purposes to other than educational purposes.  (See Love v.
City of Dallas, 40 S.W.2d 20).  This does not imply that the
Legisture is prohibited from establishing provisions for

courses for children who cannot compete, for physical or mental reasons, with the students in the regular normal curriculum; nor is it implied that the Legislature is prohibited from making provision for such children in their home community, even though an Eleemosynary Institution is maintained by the State for children who may reside in an area which does not have such services available. It is within the provision of the Legislature to determine the entrance requirements of Eleemosynary Institutions. (See Attorney General's Opinion WW-575/1959/). In our opinion, the Legislature is not prohibited from providing for these services by the local school districts. We call your attention to an Attorney General's Opinion, dated June 4, 1917, addressed to Honorable W. F. Doughty, concerning the Act, which provided for the establishment and maintenance of free kindergartens upon petitions of parents or guardians:

"In our opinion the language used in this Act is mandatory and that upon a filing of a proper petition executed by the required number of parents or guardians the Trustees of every district in the State, when so petitioned, may be required to institute the free kindergarten so prescribed in the Act. We are also of the opinion that this Act applies to all districts, whether they be common school districts or independent districts created under any of the various modes authorized by law for their creation."

In our opinion Section 1, Subsection (4)a, of Article 2922-13 of Vernon's Civil Statutes, as amended, is constitutional, when considered in the light of Subsection (4)b.

## SUMMARY

Section 1, Subsection (4)a of Article 2922-13 of Vernons's Civil Statutes, as amended, is constitutional insofar as it requires a local school district, upon proper petition, to provide the enumerated

services for exceptional children,
as defined by Subsection (4)a.

Yours very truly,

WILL WILSON
Attorney General of Texas

By

Tom I. McFarling
Assistant

TIM:mfh

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

W. Ray Scruggs
Robert T. Lewis
Wallace Finfrock

REVIEWED FOR THE ATTORNEY GENERAL
BY: W. V. GEPPERT