**LAFAYETTE STEEL COMPANY, a Michigan corporation, et al., Plaintiffs,**

v.

**CITY OF DEARBORN, a municipal corporation, et al., Defendants.**

Civ. A. No. 38994.

United States District Court,
E. D. Michigan, S. D.

June 28, 1973.

Abe Schmier, Southfield, Mich., Anthony Trogan, Jr., Karbel, Eiges, Rothstein & Karbel, Detroit, Mich., for plaintiffs.

Joseph Burtell, Carl P. Garlow, Dearborn Corp. Counsel, Dearborn, Mich., for defendant City of Dearborn.

Robert M. Vercruysse, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendant Dearborn City School District.

### MEMORANDUM OPINION

FEIKENS, District Judge.

Plaintiffs, Lafayette Steel Company (a Michigan corporation) and Leonard and Elaine Friedman, owners of real property in Dearborn (lessors to Lafayette Steel), seek a judgment declaring

unconstitutional the State of Michigan's method of taxing property to finance schools. Defendants are the School District of Dearborn and the City of Dearborn, which through its Treasurer, William F. Kaiser, is the collecting agent of taxes for the school district. Specifically, plaintiffs complain that:

" . . . the system attempts to allocate the burden of taxation among property owners of the State in an arbitrary and unequal fashion. The geographic taxing units known as school districts . . . bear no reasonable relationship to any educational need or objective in Michigan, and create arbitrary, unreasonable and capricious classifications of taxpayers for determining the rates at which the taxpayers of the several school districts of the State are to be taxed. Also, these taxpayers, including Plaintiffs, are taxed at different rates in the several school districts based on the fortuitous relationship between the wealth of the taxpayers and the number of school children in each district. As a result, Plaintiffs are required to pay at a higher tax rate than other taxpayers in other districts containing fewer school children or property of greater value."

Defendants move for summary judgment.

The parties have stipulated to the following:

(1) The State of Michigan operates educational facilities for the school children of the state through local agencies known as school districts. In the City of Dearborn the local agent is called the Dearborn City School District.

(2) For the purpose of providing revenue with which to operate the schools, the Boards of Education of the various school districts are empowered by state law to levy taxes on real and personal property within the school districts.

(3) School districts in the state differ in numerous ways including population, number of school children, geographic size, wealth and property tax rates.

(4) As a result of the many differences among school districts, the school taxes on two virtually identical pieces of realty or personalty in two different school districts probably will be different.

In view of the pleadings and stipulations there are no genuine issues of material fact.

■ Defendants contend initially that plaintiffs have no standing to bring this suit. The test is found in Doremus v. Board of Education, 342 U.S. 429, 72 S. Ct. 394, 96 L.Ed. 475 (1952). The Court indicated it did not wish to "disparag[e]" the availability of the remedy by taxpayer's action to restrain unconstitutional acts which result in direct pecuniary injury." (434, 72 S.Ct. 397). It then quoted from Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923):

" 'The party . . . must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.' " (Id.)

This court finds that plaintiffs have met that test. As evidenced by the paid-up school bills attached to plaintiffs' complaint, plaintiffs may likely show some "direct pecuniary injury." While it might be said that plaintiffs are burdened "in common with people generally," this burden cannot be viewed as "indefinite." In sum, plaintiffs have standing to bring this lawsuit.

The remaining questions for decision are whether the state's taxing scheme violates the Due Process or Equal Protection Clauses of the Fourteenth Amendment.

In researching the Due Process issue, this court has found no case containing closely analogous facts. There are Supreme Court decisions, though, involving a Due Process challenge to a state or local tax. For example, in Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct.

246, 85 L.Ed. 267 (1940), the Court made the following observations:

> "The Constitution is not a formulary. It does not demand of states strict observance of rigid categories nor precision of technical phrasing in their exercise of the most basic power of government, that of taxation. For constitutional purposes the decisive issue turns on the operating incidence of a challenged tax. A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.

> .    .    .    .    .    .

> "Th[e] test is whether property was taken without due process of law, or, paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state." (444, 61 S.Ct. 249, 250).

In *J. C. Penney*, the challenged tax was an exaction for the privilege of declaring and receiving dividends out of income derived from property located and business transacted in the state. This court believes the language in that case provides guidance for the Due Process claim at bar. See also Dane v. Jackson, 256 U.S. 589, 41 S.Ct. 566, 65 L.Ed. 1107 (1921).

Lower courts have also considered Due Process challenges to taxation. In Hudson Motor Car Co. v. City of Detroit, 136 F.2d 574 (6th Cir. 1943), plaintiff sued alleging that the City's Board of Assessors as well as its Common Council (sitting as a board of review) had overvalued plaintiff's property. Not unlike the instant case, *Hudson* challenged the State's use of local agencies to administer the state's property tax. The court rejected plaintiff's claim saying at 576–577:

"The Fourteenth Amendment was not intended to prevent a state or municipality from adjusting its system of taxation and administering its tax laws in all proper and reasonable ways. Absolute equality in taxation is unattainable. A tax is not in conflict with the Fourteenth Amendment unless its imposition clearly results in such flagrant and palpable inequality between the burden imposed and the benefit received as to amount to the arbitrary taking of property without compensation."

See also Morton Salt Co. v. City of South Hutchinson, 159 F.2d 879 (10th Cir. 1947).

Another noteworthy case is Detroit Edison Co. v. East China Township School District No. 3, 247 F.Supp. 296 (E.D.Mich.1965), aff'd, 378 F.2d 225 (1967), cert. den. 389 U.S. 932, 88 S.Ct. 296, 19 L.Ed.2d 284 (1967). Two school districts were annexed by the defendant school district and the defendant assumed the large bonded indebtedness of the annexed districts. Among other grounds asserted, plaintiff (a taxpayer in the annexing district) argued that the benefits of the annexation were disproportionately small in relation to the burden of the increased taxation and thus there was a violation of Due Process.

Judge Theodore Levin identified two categories of taxes which have been held to violate the Due Process Clause:

> "The first includes assessments for purposes that will improve the value of particular property and from which certain geographical areas could derive no benefit but would assume a heavy tax burden . . . [citations]. The second category includes non-uniform taxation which is arbitrary under the circumstances. [citation]." (303)

Detroit Edison's complaint fell under the first category and was rejected by the court.

> "[I]t has never been held that a school tax levied uniformly on all

property within the school district fails to provide benefits or can be an arbitrary exercise of the taxing power, regardless of the amount assessed to any single property owner." (Ibid.)

It would appear that in the instant case plaintiffs contend that they come within the second category. But Supreme Court authority does not support this contention; the "circumstances" which result in "non-uniform taxation" —reliance on local governmental units —are within a state's constitutional prerogatives.

■■ The state has sweeping power to fashion municipal corporations, including school districts,[1] and inherent in this power is the ability of the state to allow differences among school districts.

"The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state." Hunter v. City of Pittsburgh, 207 U.S. 161, 178, 28 S.Ct. 40, 46, 52 L.Ed. 151 (1907).

It is not uncommon, as with the defendants at bar, that a school district and city, though legally separate, govern the peoples and institutions in the same geographic area. In following local boundaries or even when creating a

school district within the territory of a number of independent local governmental entities, the state is serving its own convenience as well as promoting local control.

Municipal corporations are "created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them." (Ibid) The state's convenience would be infringed if the state could not look to existing local governmental boundaries when creating school districts. More important, recent Supreme Court decisions have recognized the "merit of local control [of schools]." San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 49, 93 S.Ct. 1278, 1305, 36 L.Ed.2d 16 (1973);[2] Wright v. Council of the City of Emporia, 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972).

There are well-recognized advantages to the state's reliance on local government control. In a local school district, for example, parents may more conveniently contact the persons responsible for the education of their children and thus participate in the education process; voters can pay close attention to elected officials and thereby insure responsiveness; taxpayers can more easily monitor the use of their tax dollars.[3]

The most practical method of implementing local control and the most effec-

---

1. A school district is a municipal corporation. Hall v. Ira Township, 348 Mich. 402, 83 N.W.2d 443 (1957).

2. Plaintiffs say *Rodriguez* has no application to the instant case. First, plaintiffs contend *Rodriguez* was brought on behalf of poor children while the instant controversy is a taxpayers' suit. This court agrees but believes this distinction does not assist plaintiffs. In assessing the interests involved in a suit dealing with property taxation for schools, *Rodriguez* is helpful.

Plaintiffs also assert that *Rodriguez* is inapplicable because in Texas, education is a dual state and local obligation while in Michigan it is solely a state responsibility. But the plain meaning of the pertinent Texas constitutional provision is that the establishment and maintenance of "public free schools" is funda-

mentally a state obligation. Tex.Const. 1876, Vernon's Ann.St., Art. 7, §§ 1, 3. The Texas Supreme Court has so held. Webb Co. v. School Trustees, 95 Tex. 131, 65 S.W. 878 (1901); Mumme v. v. S. M. N. Marrs, 120 Tex. 383, 40 S.W.2d 31 (1931). Or again in *Rodriguez*, "the Texas system is comparable to the systems employed in virtually every other State." (411 U.S. at 47, 93 S.Ct. at 1304).

3. That is not to say, however, that reliance on local school districts is not without disadvantages. A particular school district may only expose its pupils to a narrow range of ideas and experiences; racial segregation may occur in some school districts making adherence to constitutional desegregation requirements difficult.

tive way to draw on the resources of local communities is to respect existing governmental borders when creating local school districts.

■ The state's exercise of its taxing power through local school districts is certainly related to the locally provided educational opportunities and benefits given by the state. Since there is a reasonable, not arbitrary, fiscal relationship between the local agency providing the education and that same agency taxing within its borders to finance its educational services, this court concludes there is no violation of the Due Process Clause.

■ These observations also apply to the Equal Protection issue. In the area of social and economic policy, the rational basis test is to be applied. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). This court finds that taxation for education falls within the area of economic and social welfare.

"In such a complex arena [taxation] in which no perfect alternatives exist, the Court does well not to impose too rigorous a standard of scrutiny lest all local fiscal schemes become subjects of criticism under the Equal Protection Clause." *Rodriguez*, 411 U.S. at 41, 93 S.Ct. at 1301.

This court finds there is a rational basis for the state's method of financing through local districts. Thus, there is here no violation of the Equal Protection Clause.

Finally, this court takes note of some compelling language from the *Rodriguez* decision:

"[I]f local taxation for local expenditure is an unconstitutional method of providing for education then it may be an equally impermissible means of providing other necessary services customarily financed largely from local property taxes, including local police and fire protection, public health and hospitals, and public utility facilities of various kinds. We perceive no justification for such a severe denegration of local property taxation and control as would follow from appellees' contentions. It has simply never been within the constitutional prerogative of this Court to nullify statewide measures for financing public services merely because the burdens or benefits thereof fall unevenly depending upon the relative wealth of the political subdivisions in which citizens live." (411 U.S. at 54, 93 S.Ct. at 1307–1308.).

For the reasons set forth in this opinion, defendants' motion for summary judgment is granted.

An appropriate order may be submitted.