## ATTORNEY GENERAL OF THE STATE OF MICHIGAN UPON THE RELATION OF KIES *v.* LOWREY.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 21. Argued October 23, 24, 1905.—Decided November 13, 1905.

It is the power and duty of this court to determine for itself the existence or non-existence of the contract, the obligation whereof is claimed to have been impaired, and a Federal question may be involved, although the state court may have rested its decision on the construction of the con-stitution and laws of the State.

Where the legislature of the State has the power to create and alter school districts and divide and apportion the property thereof, no contract arises in favor of any district created by an act, the obligation whereof is later impaired by a subsequent act altering the districts and trans-ferring property, nor does such later act amount to the taking of the property of the district taken without due process of law.

There are many ways in which the legislature has absolute power to make and change subordinate municipalities. *Laramie County* v. *Albany County*, 92 U. S. 307.

THE facts are stated in the opinion.

*Mr. Frank A. Lyon* for plaintiff in error:

While the State has the right, through its legislature, to mold and fashion the policy of its institutions, create or destroy municipalities, grant them charters, modify, amend or repeal those charters, define their powers, restrict those powers or take them away, the right of local self-government by these municipalities and local institutions is an absolute and vested right which the State cannot take away. The act establish-ing school districts as municipalities preceded the adoption of the constitution, and is recognized by that instrument. Mechen on Public Officers, § 123; *People* v. *Hurlbut*, 24 Michigan, 44; *Attorney General* v. *Detroit*, 29 Michigan, 110; *People* v. *Detroit*, 28 Michigan, 228; *Attorney General* v. *Detroit*, 58 Michigan, 213; *Moreland* v. *Millen*, 126 Michigan, 381; *Maynard* v. *Board*, 84

Michigan, 228; *Stuart* v. *School District*, 30 Michigan, 69; *Belles* v. *Burr*, 76 Michigan, 1; *State* v. *Denney*, 118 Indiana, 449; *Evansville* v. *State*, 118 Indiana, 426; *Clinton* v. *Cedar Rapids Railway Co.*, 24 Iowa, 455; *State* v. *Moores*, 55 Nebraska, 480; *Cincinnati W. & Z. R. Co.* v. *Commissioners*, 10 Ohio St. 77; *Parker* v. *Commonwealth*, 6 Barr (Penn.), 511; *People* v. *Albertson*, 55 N. Y. 50; *Rathbone* v. *Worth*, 150 N. Y. 459; *Benson* v. *New York*, 10 Barb. 223; *State* v. *Constantine*, 42 Ohio St. 427; *West Point Co.* v. *State*, 42 Nebraska, 208; *People* v. *Mayor*, 51 Illinois, 17; *People* v. *Lynch*, 51 California, 15; *Grogan* v. *San Francisco*, 18 California, 590; Cooley on Const. Lim., 5th ed., 45, 203, 209, 225, 228; Dillon on Mun. Corp., 4th ed., § 9; Van Holst Const. Law, 271.

Municipal corporations have a dual capacity: *Public*, as an instrument of the general state government, and *private*, as representing the local community. As an instrument of government they are agencies of the State and parts of the general state government by which they are created, and are subject to the plenary control of the legislature, at whose will their charters may be amended, changed, modified, altered, or repealed, without their consent and even against their protest. But, in their local character, they may contract and be contracted with, acquire, purchase and hold property, and sell and dispose of the same, and sue and be sued; choose their officers, agents and representatives by whom their local concerns are managed, acting not as public corporations or governmental agencies, but as private corporations or individuals. Their character and rights preceded the constitution, and are recognized by that instrument. As to matters which pertain exclusively to the general state government they are public corporations; but as to those matters which are of local concern, they partake of the nature of and are governed by the rules applicable to such corporations. Cases *supra* and *Dartmouth College case*, 4 Wheat. 518; *Milwaukee* v. *Milwaukee*, 12 Wisconsin, 100; *Pearson* v. *State*, 56 Arkansas, 148; *Mt. Hope Cemetery* v. *Boston*, 158 Massachusetts, 509; *Benson* v. *Mayor*

*&c. New York,* 10 Barb. 223, 244; *State* v. *Haben,* 22 Wisconsin, 660; Dillon Mun. Corp. §§ 68–74; Cooley on Const. Lim., 5th ed., 289.

While municipal charters are in no sense contracts between the State and municipalities the question of whether these *charters* are contracts between the State and the municipalities, is higher and more far-reaching. It is a question as to whether there is an implied contract between the people of the State and the people of each local community, that these communities shall not be deprived of their rights of local self-government and the right to manage their local affairs in accordance with their own wishes, and shall not be deprived of their vested rights in the municipal property acquired for the benefit of the inhabitants, and see on this point cases *supra* and *Warren* v. *Lyons City,* 22 Iowa, 351; *Tippecanoe Co.* v. *Lucas,* 93 U. S. 108; *Briston* v. *New Chester,* 3 N. H. 524; *People* v. *Supervisors,* 4 Barb. 64; *Detroit* v. *Plank Road Co.,* 43 Michigan, 140, 148.

When a municipality is divided the property may be divided and apportioned to the territory remaining in the old municipality and that set off, provided provision is made by law therefor, but if no such provision is made, the property belongs to that part of the old municipality still remaining. *Saginaw* v. *School District,* 9 Michigan, 541; *Milwaukee* v. *Milwaukee,* 12 Wisconsin, 93, 104; *Wyndham* v. *Portland,* 4 Massachusetts, 384; *Hampshire* v. *Franklin,* 16 Massachusetts, 76; *Winona* v. *School District,* 40 Minnesota, 13.

*Mr. Henry B. Graves* and *Mr. F. Stone* for defendants in error:

As to the jurisdiction.

No Federal question was raised in the state Circuit Court, all references being to the constitution of Michigan. *Porter* v. *Foley,* 24 How. 415; *Endowment Assn.* v. *Kansas,* 120 U. S. 103; *Miller* v. *Cornwall R. R. Co.,* 168 U. S. 131; *Kipley* v. *Illinois,* 170 U. S. 182, 187; *Jacobi* v. *Alabama,* 187 U. S. 133.

If any Federal question was raised in the State it was the question of the taking of property without due process of law and the question of the impairment of contracts was not raised at all under either constitution.

Nothing in the judgment rendered in the state court indicates that any Federal question was involved or decided.

No contract has been impaired in its obligations. The school districts, which the act abolished, were *public* corporations. 2 Comp. Laws Mich., 1897, § 4652. School districts have been called municipal corporations. *Belles* v. *Burr*, 76 Michigan, 1, 11; *School District* v. *Gage*, 39 Michigan, 484. More properly, they are *quasi* municipal corporations. 25 Am. & Eng. Ency. Law, 2d ed., 31; *Bush* v. *Shipman*, 5 Illinois, 186; *People* v. *Dupuyt*, 71 Illinois, 651; *Littlewort* v. *Davis*, 50 Mississippi, 403; *Johnson* v. *Dole*, 4 N. H., 478; *Stroud* v. *Stevens Point*, 37 Wisconsin, 367; *Rawson* v. *Spencer*, 113 Massachusetts, 40, 45. They are certainly *public* corporations as distinguished from *private* corporations. The law creating them so styles them.

Their birth is the voluntary act of the legislature of Michigan, and they are sometimes unwilling to be born. They are created solely and simply to fulfill certain public functions. The act creating them and laying upon them certain public duties and arming them with the taxing power and the right to hold property, etc., is not in itself a contract. The charter of a municipal corporation is in no sense a contract, and the property acquired by the municipality is not acquired by virtue of any contract with the creator of the municipality. The abolished school districts were public corporations, and neither owed their existence nor held their property through any contract with the State. 2 Comp. Laws of Mich., 1897, §§ 4652 *et seq.; Rawson* v. *Spencer*, 113 Massachusetts, 40, 45; *Dartmouth College Case*, 4 Wheat. 518; *East Hartford* v. *Bridge Co.*, 10 How. 511; *Aspinwall* v. *Commissioners*, 22 How. 364; *United States* v. *B. & O. R. R. Co.*, 17 Wall. 322; *Laramie Co.* v. *Albany Co.*, 92 U. S. 307; *Tippecanoe County* v. *Lucas*, 93 U. S. 108; *Mt. Pleasant* v. *Beckwith*, 100 U. S. 514; *Newton* v. *Commis-*

*sioners,* 100 U. S. 548; *Essex Public Road Board* v. *Skinkle,* 140 U. S. 334; *Worcester* v. *Street Railway Co.,* 196 U. S. 539.

There is no showing of any property held by the abolished districts pursuant to any contract with third persons.

The question of the Fourteenth Amendment is not in this case. But if it were, it would seem that there is no showing of any *private* property held by the districts, which the legislature could not touch without the consent of the inhabitants of the districts and without due process of law.

There is nothing in the record to indicate the diversion of any property or the unfair apportionment of property.

MR. JUSTICE MCKENNA delivered the opinion of the court.

The constitution of the State of Michigan requires the legislature to establish and provide a system of public schools, whereby a school shall be kept open at least three months in each year in every school district in the State. In fulfillment of this requirement legislation was enacted from time to time providing for the formation of school districts. Under this legislation (1881) four school districts were organized in the townships of Somerset and Moscow, county of Hillsdale. In 1901 the legislature passed an act known as "Act Number 315 of the Local Acts of the State of Michigan for the Year 1901," entitled "An act to incorporate the public schools of the village of Jerome, Hillsdale County, Michigan; define the boundaries thereof, provide for the election of trustees and fix their powers and duties, and provide for the distribution of the territory of the disorganized districts." By this act one of the districts formed in the townships of Somerset and Moscow, in which the village of Jerome is situated, and portions of other districts, was set off and incorporated in one school district, to be known as "the public schools of the village of Jerome." The act appointed defendants in error trustees of the new district, to continue in office until their successors should be elected, as provided in the act. The act gave to the new dis-

trict the property within its limits which had belonged to the districts from which it was created, and required the new district to assume and pay the debts and obligations of the old districts. The new district did not include all the lands of the old districts.

On the seventh of October, 1901, an information was filed in the nature of a *quo warranto* by the attorney general of the State upon the relation of L. E. Kies, W. E. Alley, J. B. Strong and Stephen McCleary, charging defendants in error with usurping, intruding into and unlawfully claiming to exercise "a false, fictitious and pretended public office, to wit, trustees and officers of the pretended school district known as 'The public schools of the village of Jerome,' and *ex officio* 'The board of school inspectors of the public schools of the village of Jerome,' to wit, at the county of Hillsdale aforesaid, in contempt of the people of the State of Michigan, and to their great damage and prejudice."

The Circuit Court rendered a judgment of ouster against defendants in error. The Supreme Court entered the following judgment: "The judgment of ouster should be affirmed as to such officers as now hold under the legislative appointment, if there be any thus holding. As to others, if any, it will be reversed."

The grounds of attack upon the validity of the act creating the new district in the Supreme Court of the State were as follows:

First. It deprives this school district or municipality of the right of local self-government, guaranteed to all municipalities by the constitution.

Second. The title to the act indicates and the act itself embraces more than one object.

Third. The act is broader than the title; the body of the act embraces many objects not covered by the title.

Fourth. The act as passed impairs the obligation of contracts, within the meaning of the Constitution of the United States and the constitution of the State of Michigan.

With the first three grounds we have no concern. They present strictly local questions. We are concerned with the fourth ground only in so far as it invokes the Constitution of the United States. The Supreme Court disposed of this ground as follows: "We have already shown that the obligation of contracts is not impaired. The districts did not hold this property under any contract with the State, but as a public agency." In other words, the non-existence of a contract was rested on the construction of the constitution and laws of the State, and hence defendant in error contends that the decision of the court did not involve a Federal question. This, however, overlooks the power and duty of this court to determine for itself the existence or non-existence of a contract. Other grounds in support of the motion to dismiss are urged which, we think, are also untenable. The motion is therefore denied.

Plaintiff in error broadened in this court his objections to the act, based on the Constitution of the United States. He urges, besides, the contract clause of the Constitution, that provision of the Fourteenth Amendment which protects private property from deprivation without due process of law, and section 4, Article IV, which provides "The United States shall guarantee to every State in the Union a republican form of government." But the grounds all depend ultimately upon the same arguments. If the legislature of the State has the power to create and alter school districts and divide and apportion the property of such districts no contract can arise, no property of a district can be said to be taken, and the action of the legislature is compatible with a republican form of government even if it be admitted that section 4, Article IV, of the Constitution applies to the creation of, or the powers or rights of property of, the subordinate municipalities of a State. We may omit, therefore, that section and Article from further consideration. The decision of the other grounds urged, we may rest upon the opinion of the Supreme Court of the State and the case of *Laramie County* v. *Albany County et al.*, 92 U. S. 307. It is there said in many ways, with citation of

many supporting cases, that the legislature of a State has absolute power to make and change subordinate municipalities. The following quotation meets exactly the contentions of plaintiff in error:

"Institutions of the kind, whether called counties or towns, are the auxiliaries of the State in the important business of municipal rule, and cannot have the least pretension to sustain their privileges or their existence upon anything like a contract between them and the legislature of the State, because there is not and cannot be any reciprocity of stipulation, and their objects and duties are utterly incompatible with everything of the nature of compact. Instead of that, the constant practice is to divide large counties and towns, and to consolidate small ones, to meet the wishes of the residents, or to promote the public interests as understood by those who control the action of the legislature. Opposition is sometimes manifested but it is everywhere acknowledged that the legislature possesses the power to divide counties and towns at their pleasure and to apportion the common property and the common burdens in such manner as to them may seem reasonable and equitable." Many cases are cited. See also *Worcester* v. *Worcester Street Railway Co.*, 196 U. S. 539.

*Judgment affirmed.*