OFFICE OF THE ATTORNEY GENERAL OF TEXAS
AUSTIN



GERALD C. MANN
ATTORNEY GENERAL

Honorable W. W. Boyd
Director of Coastal Division
Game, Fish & Oyster Commission
Professional Building
Corpus Christi, Texas

Dear Mr. Boyd: .

Opinion No. O-992
Re: The State of Texas has the
authority to regulate and
control the taking of fish,
shrimp and all other marine
life from the coastal waters
within its territorial limits.

   This office is in receipt of a letter from Hon. A. E.
Wood, Chairman, Game, Fish and Oyster Commission, Austin, Texas,
together with a letter addressed to him by Mr. Henry W. Flagg,
President of the Texas Wildlife Federation, Galveston, Texas.
These letters read respectively as follows:

   "The enclosed letter from Hon. Henry W. Flagg,
President of the Texas Wildlife Federation is self-
explanatory. It seems from his letter that the
fishermen are using shrimp trawls, as indicated in
his letter, without necessary licenses. They also
appear to be fishing in waters that are closed un-
der our law. It seems that these fishermen, and
the companies for whom they are fishing, claim that
the State has no authority to require of them a
license of any kind, and that they are not restric-
ted as to where they may fish, when fishing in the
Gulf.

   "I will appreciate it very much if you will
advise our Coastal Director, Mr. W. W. Boyd, at
Corpus Christi, Texas, your opinion as to whether
of not licenses are required of these fishermen
when fishing as indicated in his letter, and
whether or not it is lawful for these, or other
parties, to fish at the place where they are
shown to have been fishing in Mr. Flagg's letter.

   "I will appreciate it very much if you will
let me have a copy of your ruling, sending the

original to Mr. W. W. Boyd, as above indicated. * * *

(Signed) A. E. Wood

"This morning, in anticipation of trouble, Frank Mebane and I went on patrol service and took along with us two extra witnesses, and we ran into the following proposition:

"There were a number of shrimping boats dragging their trawls within one mile of the Galveston South Jetty and within one mile from shore of the east beach front, that is the beach that lies just east of the City of Galveston. These boats belong to and/or were being operated for the Texas Fisheries, Liberty Fish and Oyster Company, National Seafood Company and Carlo's Seafood, all of Galveston. None of the boats had licenses, nor did any of the operators of the boats have licenses of any kind. These companies claim that the State has no authority to require of them a license of any kind for the privilege of trawling or seining in the Gulf irrespective of whether it is three miles, three leagues or three feet from shore; that these are navigable waters and that only a Coastguardsman or a Customs Officer have a lawful right to board their boats, and that specifically a Texas Game Warden has no jurisdiction nor authority over them.

"I believe that this matter should be brought to a showdown immediately.

"The Department is losing considerable revenue as none of these companies have bought licenses for 1938-1939 and contend that they shall refuse to do so.

"In my humble opinion the responsibility of the above matters should not be left to the County or District Attorney but should be closely supervised by the Attorney General's Department. * * *

(Signed) Henry W. Flagg

It appears from these letters that the named fishing companies are sending their shrimping boats into the waters of

the Gulf of Mexico, situated less than one league distant from the shore, and there take shrimp by dragging trawls, without first having paid the license fees prescribed by Article 934a, Vernon's Annotated Penal Code, and in violation of other statutory regulations governing the taking of edible aquatic life from the waters of this State for pay, barter, sale or exchange. These people are contending that the State of Texas has no jurisdiction over their fishing or shrimping activities anywhere in the Gulf of Mexico.

In our opinion such a contention is not well founded and that the law is to the contrary.

The Congress of the Republic of Texas passed an Act defining its boundaries which was signed by President Houston, December 19, 1836. That part of the Act, with which we are here concerned, reads as follows:

"That from and after the passage of this act, the civil and political jurisdiction of this republic be and is hereby declared to extend to the following boundaries, to wit: beginning at the mouth of the Sabine river, and running west along the Gulf of Mexico three leagues from land, to the mouth of the Rio Grande, thence up the principal stream of said river to its source ..." (1 Gammel's Laws 1193)

In the case of City of Galveston v. Menard, 23 Tex. 391, in referring to that part of the boundary fixed by the Congress at "three leagues from land," the Court took occasion to say:

"This claim of the republic upon her coast may not have been admitted by other nations further than one marine league from the shore. Angell, Tide Waters, 2; Vattell, 129. That would very much have depended upon her power to enforce her claim, as we have seen in the case of the British seas and Danish sound. Wheaton Law of Nations, 152-158; 1 Kent. Com. 29."

When the Republic of Texas became by annexation one of the states of the Union, it, as a State, did not relinquish but retained "all the vacant and unappropriated lands lying within its limits." "Its limits" had been defined by the Congress of the Republic as beginning "at the mouth of the Sabine



river, and running west along the Gulf of Mexico <u>three</u> leagues from land to the mouth of the Rio Grande."

After becoming a State, the Legislature reaffirmed its "exclusive right to the jurisdiction over the soil included in the limits of the late Republic of Texas." (Hartley's Dig. Arts. 1631 and 1634).

The State has always contended that it owns the soil beneath the waters of the Gulf of Mexico to the extent of her boundaries. In recent years she has executed mineral leases to divers persons on land so situated. She has for more than fifty years had laws regulating the taking of fish from her coastal waters. At the last session of the Legislature, the State reasserted its jurisdiction and authority to regulate and control the taking of fish in her coastal waters to the extent of her boundary, which coastal boundary she declared to be:

"bounded on the east by a line drawn from the center of Sabine Pass, cutting across the East Sabine Jetty et a point two thousand (2,000) feet north of the present pier known as the Jaycee Pier, and extending three (3) marine leagues into the Gulf of Mexico, following along the coast line of Texas to the present acknowledged boundary between the State of Texas and the Republic of Mexico." (H.B.No. 683, effective June 30, 1939)

In Manchester v. Massachusetts, 139 U.S. 240, 258 it is said:

"We think it must be regarded as established that, as between nations, the <u>minimum</u> limit of territorial jurisdiction of a <u>nation</u> over tide waters is a marine league from its coast; that bays wholly within its territory not exceeding two marine leagues in width at the mouth are within its limit; and that included in this territorial jurisdiction is the right of control over fisheries, whether the fish be migratory, free-swimming fish, or free-moving fish or fish attached to or imbedded in the soil. The open sea within this limit is, of course, subject to the common right of navigation; and all governments, for the purpose of self-protection in time of war or for the preventing of frauds on its revenue, exercise an authority beyond this limit."

In the case of Smith v. Maryland, 18 How. 71, 74, it was said:



"Whatever soil below low-water mark is the subject of exclusive property and ownership, belongs to the State on whose maritime border and within whose territory it lies, subject to any lawful grants of that soil by the State, or the sovereign power which governed its territory, before the declaration of independence."

In referring to the above quotation, the court in Manchester v. Massachusetts, supra, made this comment:

"But this soil is held by the State, not only subject to, but in some sense in trust for, the enjoyment of certain public rights, among which is the common liberty of taking fish, as well shell-fish as floating fish."

In Dunham v. Lamphere, 3 Gray 268, it was held that in the distribution of powers between the general and State governments, the right to the fisheries and the power to regulate the fisheries on the coasts and in the tide-waters of the State, were left by the Constitution of the United States, with the States, subject only to such powers as Congress may justly exercise in the regulation of commerce, foreign and domestic.

The courts have never held, insofar as we have been able to ascertain, that the regulation of the fisheries within the territorial limits of a State was a regulation of commerce. In Manchester v. Massachusetts, supra, it was also said:

"These (fisheries) remain under the exclusive control of the State, which has consequently the right, in its discretion, to appropriate its tide-waters and their beds to be used by its people as a common for taking and cultivating fish, so far as it may be done without obstructing navigation."

The above cited case is also authority for the proposition that a State can regulate fishing in the navigable coastal waters within its territory, in the absence of any regulation by the United States. We know of no such attempted regulation of fisheries applicable to such waters of this State.

In the case of Poon v. Miller, 234 S. W. 573, Judge Fly, speaking for the Court, said:



"The State of Texas declares, through article 3980, Vernon's Sayles' Statutes, that—

"'All of the public rivers, bayous, lagoons, lakes, bays and inlets in this state and all that part of the Gulf of Mexico within the jurisdiction of this state, together with their beds and bottoms, and all the products thereof, shall be, continue and remain the property of the state of Texas, except so far as their use shall be permitted by the laws of this state.'

"Texas, since the yoke of Mexico was thrown off in 1836 and she became an independent government, has never for one moment lost the sovereignty over her lakes, rivers, bayous, lagoons, bays, and inlets and the bed of the Gulf of Mexico for three miles from the coast from the mouth of the Sabine river to the mouth of the Rio Grande. By treaty Texas entered into the American Union, after having been an independent government for nearly 10 years, and the property she had in her rivers, bayous, lagoons, lakes, bays, and inlets and the three-mile Gulf zone, as well as all her public lands, were reserved and retained by the terms of her treaty with the United States. The statute quoted is merely a declaration of rights that required no statute to give them force and vitality. The fish and game are the property of the state, and she not only has the power to regulate and control the taking of fish and killing of game, but to absolutely prohibit the same. Sterrett v. Gibson (Tex. Civ. App.) 168 S. W. 16. That proposition is no longer open for discussion, nor is the further proposition that the state has not only the authority to regulate or prohibit the capture of fish or slaughter of game, but has the authority to absolutely regulate or prohibit the sale of such game or fish when killed or taken. It does prohibit the sale of game and does regulate the sale of fish, oysters, and other products of streams, bays, lakes, and estuaries."

It will be noted that the court would apparently limit the jurisdiction of the state over its fisheries to "three miles from the coast from the mouth of the Sabine river to the mouth of the Rio Grande." The question before the court was not one of the extent of the State's territorial jurisdiction, but one involving the right of an alien to sell fish which had become a part of the commerce of the country, and which right had been denied him, but granted to citizens of the State. Therefore, the quotation is dictum and does not decide the question of the



extent of the territorial jurisdiction of the State over its coastal waters.

Insofar as we have been able to ascertain, the question of whether the State has jurisdiction over its fisheries to the extent of its declared eastern boundary, "three leagues from land," or only one league from its shores has never been judicially determined. However, the acts referred to in the letters herein quoted were committed well within the unquestioned territorial jurisdiction of this State.

That part of the opinion in Poon V. Miller, supra, dealing with the authority of the State to control and regulate the taking of fish from its tidal waters is sound law, abundantly supported by both State and Federal authorities. Smith v. Maryland, 18 How. 71, 74; McCready v. Virginia, 94 U. S. 391; Manchester v. Massachusetts, 139 U. S. 240; Lawton v. Steele, 152 U. S. 133; Louisiana v. Mississippi, 202 U. S. 1; New York ex rel Kennedy v. Becker, 241 U. S. 556; Miller v. McLaughlin, 281 U. S. 264; Sterrett v. Gibson, 168 S. W. 16; Poon v. Miller et ux, 234 S. W. 573; Stephenson v. Wood (Sup. Ct.) 34 S. W. (2d) 246; 19 Tex. Jur. 688; 11 R.C.L. 1029. Also see Manry v. Robinson (Sup. Ct.), 56 S. W. (2d) 438.

Wherever we have used the term "fish" in this letter, we have used it in its generic sense, as being descriptive of marine life generally, including not only fish as that word is commonly understood, but including oysters, clams, shrimp, crabs, terrapins, turtles, lobsters, and all other kinds and form of marine life embraced within the provisions of Article 4026, Revised Statutes, and by which Article the State has asserted its ownership and authority to regulate the taking thereof in the waters therein described.

You are advised that we know of no reason why any person is exempt from the laws of this state regulating, prohibiting, taxing and governing the taking of fish in the coastal waters of this state. Therefore, we have, in view of the authorities cited, been forced to the indubitable conclusion that the fishing concerns named in Mr. Flagg's letter are amenable to all of our laws governing the taking of fish, shrimp and other marine life in the Gulf of Mexico within the territorial limits of this State, which undoubtedly cannot be less than one league from its shore line.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JUL 14, 1939       By _Bruce W. Bryant_

Bruce W. Bryant,
Assistant

BWB:pbp

FIRST ASSISTANT

CC:  Mr. ATTORNEY GENERAL Chairman
Game, Fish & Oyster Commission
Austin, Texas

APPROVED
OPINION
COMMITTEE
BY _WRK_
CHAIRMAN