**Darlene THOMPSON, et al., Plaintiffs,**

v.

**BOARD OF EDUCATION OF the ROMEO COMMUNITY SCHOOLS, et al., Defendants.**

**No. G75–557 C.A.**

United States District Court, W. D. Michigan, S. D.

Aug. 21, 1981.

Mary Job, Lansing, Mich., for plaintiffs.

Butzel, Long, Gust, Klein & VanZile, Detroit, Mich., Cholette, Perkins & Buchanan, Grand Rapids, Mich., for defendants; Robert M. Vercruysse, Detroit, Mich., Anthony A. Derezinski, Grand Rapids, Mich., of counsel.

## OPINION

FOX, Senior District Judge.

*I. Introduction.*

This is a case in which the plaintiffs, women teachers employed by defendant school districts, allege that defendant districts and their officials discriminated against them by treating disabilities resulting from pregnancy differently than other temporarily disabling conditions. This alleged sexual discrimination is challenged under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, 42 U.S.C. § 1983, and the due process and equal protection clauses of the fourteenth amendment to the United States Constitution. There also has been a pendent state claim raised under the Michigan Elliot-Larsen Civil Rights Act, M.C.L.A. § 37.2101 *et seq.*

In a previous opinion, this court has certified both a defendant class and a plaintiff class as follows:

> *Defendant class*: All school boards in the State of Michigan which, since March 24, 1972, have treated or now treat pregnancy related disabilities differently than other temporary disabilities, limited to the school boards in districts wherein the MEA has female members who have been or will be subject to such policies or practices.

> *Plaintiff class*: All female teachers of such school boards who have been since March 24, 1972 or will be in the future,

denied the benefits of a sick leave policy which treats pregnancy related disabilities the same as other temporary disabilities.

71 F.R.D. 398, 418 (W.D.Mich.1976).

Additional plaintiffs are the Michigan Education Association and the Warren Education Association, each acting for itself and for its members affected by defendants' policies. The Michigan Association of School Boards is also a defendant for purposes of effectuating any declaratory and injunctive relief against the class and of representing the members of the defendant class.

After a lengthy dormant period due, in part, to a desire to await several pending Supreme Court decisions in the area of the proper treatment of pregnancy disabilities, this case has again been brought before this court for consideration of several pretrial motions.

Plaintiffs have moved this court for partial summary judgment as to the liability of defendants under Title VII and under the Elliot-Larsen Civil Rights Act. Plaintiffs further request the court to bifurcate the trial into liability and relief aspects.

Defendants have responded with their own motion for partial summary judgment. They argue that Title VII, as a matter of law, has not been violated by defendants' policies and actions. Additionally, it is asserted that Elliot-Larsen (1) is preempted by the Employee Retirement Income Security Act of 1974, (2) is unconstitutional under the one-object rule of the Michigan Constitution, article 4, section 24, and (3) should not be considered by the federal court at this time under an abstention doctrine.

In a separate motion, defendants ask this court to decertify both of the classes originally recognized in this action.

## II. Reconsideration of Class Certification.

Defendants have moved this court to decertify both the plaintiff and defendant classes that originally had been recognized. They argue that this court's legal foundation for certifying a defendant class has

been removed by the decision in *Paxman v. Campbell*, 612 F.2d 848, 854 (4th Cir. 1980), reversing the district court's decision certifying a defendant class made up of members of school boards in districts that improperly discriminated against pregnant school teachers. Defendants also challenge the standing of plaintiffs, named and unnamed, to bring suit against school districts for which they did not work. This latter issue will be considered first because if there is no broad standing, the plaintiff class would have to be broken down into subclassifications and the defendant class would necessarily be decertified.

Defendants rely heavily on *Vulcan Society v. Fire Department of the City of White Plains*, 82 F.R.D. 379 (S.D.N.Y.1979), where several black fire fighters and an organization brought an action against various townships in Westchester County alleging employment discrimination. Plaintiffs sought class certification but defendants opposed on the ground that individual plaintiffs had no cause of action or standing against those municipalities for which they had not worked and that creating a class of those plaintiffs could not be used to avoid standing difficulties. The court held that each plaintiff only had standing to sue the municipality for which he worked since municipalities are separate legal entities, individually responsible for their practices and policies. If there was no complaining plaintiff from a particular municipality, there could be no cause of action against that municipality. 82 F.R.D. at 399. The court found no conspiracy or joint liability in that case though joinder of the defendants was valid since the defendants used the same state-administered test in making their hiring and promotional decisions. The court noted that plaintiffs did not attempt to certify a defendant class in that action, as had been done in *Marcera*, thereby leaving open the possibility of a different result in that instance.

Plaintiffs raise *Marcera v. Chinlund*, 595 F.2d 1231 (2nd Cir. 1979), remanded for reconsideration of the merits in light of *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60

L.Ed.2d 447 (1979) *sub nom. Lombard v. Marcera,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 282 (1979). In *Marcera,* pretrial detainees in a county jail sued the county sheriff to permit contact visits. The Court of Appeals allowed the plaintiffs, as class representatives, to sue a defendant class of county sheriffs even though it was not alleged that each member of the plaintiff class was incarcerated by each member of the defendant class. The Court reached this result despite the fact that the defendants were not administering a single state statute or state policy, but rather were each engaging in similar administrative practices. The Court of Appeals thought this difference was immaterial since the challenged behavior of all of the defendants was virtually identical, 595 F.2d at 1238, n.10, and any variations were insignificant, making classwide relief clearly beneficial to all class members. *Id.* 1240.

*Pennsylvania v. Local 542, IUOE,* 469 F.Supp. 329 (E.D.Pa.1979), also allowed a plaintiff class to sue employers for whom all the members of the class had not worked. However, the close relationship of the defendant class and the Local, which served as the common hiring hall for all of the defendant class members, was used to justify this result.

■ What seems to be developing out of these cases is a narrow exception to strict standing requirements. A class of plaintiffs has standing to sue a group of defendants even though each individual member of the plaintiff class may not have been injured by each individual member of the defendant class *only if* the individual defendants are all acting to enforce a single statutory or administrative scheme or if the common practice of all defendants is virtually identical.

The question then becomes whether the plaintiff class of female teachers fits into this narrow category. In the case presently before the court, there has been no allegation or evidence that the defendant class is pursuing a single policy in the formulation of their pregnancy disability programs. There is no state law or directive which they uniformly administer and nothing indicates a conspiracy directed against the members of the class. Each member of the defendant class is free to develop, through negotiations and individual board policy, their own pregnancy disability program.

Despite the fact that the precise policies of each defendant may vary in their particulars, that which allegedly makes them illegal is the same. 71 F.R.D. at 409. The ultimate result of these policies is claimed to be that plaintiffs, and the class that they represent, have been discriminated against on the basis of their sex. The common question of law is "[w]hether a school board, which refuses to allow pregnancy-related disabilities to be treated as are all other temporary disabilities, is illegally discriminating on the basis of sex, within the meaning of Title VII." 71 F.R.D. at 402. It is this court's preliminary opinion that all of defendants' policies relating to pregnancy disabilities can be dealt with in one lawsuit, either to validate or to invalidate them, even though they are not exact duplicates of each other. If, following the presentation of proofs in this action, it becomes clear that these policies are not sufficiently similar to justify plaintiffs' broad standing, this court can take corrective measures at that time.

Defendants also requested this court to reconsider the certification of a defendant class in light of the decision of the United States Court of Appeals for the Fourth Circuit in *Paxman v. Campbell,* 612 F.2d 848, 854 (6th Cir. 1980), reversing the district court opinion that served, in a large part, as the basis of the earlier decision of this court in certifying a defendant class under Federal Rule of Civil Procedure 23(b)(2).

The court in *Paxman* overturned the district court's use of Rule 23(b)(2) to certify a defendant class. 612 F.2d 854. Despite its apparently broad holding, it is clear that there are situations in which defendant class certification under (b)(2) is appropriate, *e. g., Marcera v. Chinlund,* 595 F.2d 1231 (2nd Cir. 1979); *Washington v. Lee,* 263 F.Supp. 327 (M.D.Ala.1966), aff'd, 390

U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968). The most obvious example of this is when a plaintiff brings suit against a class of local officials challenging their enforcement of an allegedly invalid statute or administrative policy.

It is clear, however, that the majority of courts are unwilling to go too much further than this. Two cases that permit defendant classes point this out. The *Marcera* court allowed pretrial detainees in a county jail to sue a class of defendants made up of the county sheriffs of the state even though there was no state statute or administrative policy requiring defendants to act in a certain manner. However, the court found that because the administrative practices were identical, this distinction was immaterial.

The district Court in *Pennsylvania v. Local 542, IUOE*, 469 F.Supp. 329 (E.D.Pa. 1979), found it to be incongruous to put the power to create a defendant class in the hands of plaintiffs by allowing them to act on grounds generally applicable to a class in order to validate defendant class certification. However, the court went on to say that where a plaintiff or a class of plaintiffs is forced to act towards a class of employers in one and only one way as a condition of their employment, Rule 23(b)(2) is satisfied. 469 F.Supp. at 415–417. In that case, all of the members of the defendant class hired workers from the defendant union whose hiring hall policies were also being challenged.

*Stewart v. Winter*, 87 F.R.D. 760 (N.D. Miss.1980), attempts to clear up some of the difficulties in this area. The court there recognizes the situations in *Washington v. Lee* and *Marcera*, but distinguished them as discussed above in reaching its decision to deny class certification. The court held that the proposed defendant class could not be certified under (b)(2) where it was not the party seeking injunctive relief or where plaintiff was not challenging the constitutionality of a statute or administrative policy being enforced by all of the class members. 87 F.R.D. at 770. The court followed the *Paxman* Court of Appeals decision, finding no state statute or administrative

policy unifying the class defendants' actions; rather, defendants could adopt whatever policies they wished, within constitutional limits.

■ In the case presently before this court, the question of certification turns on an analysis of the policies of the various members of the defendant class. This is not a case where all the defendants are acting under one directive from some superior authority or where there is an obvious binding link among all defendants on this particular policy issue. The case law would then seem to require nearly identical practices among all of the defendants. However, as in the question of standing discussed earlier, this identity of practices is dealt with in a functional manner rather than merely on an inspection of facial similarities. It is the holding of this court that it is likely that beneath the surface variations of the defendants' policies lie the common core questions of defendants' obligations and liabilities under Title VII. Additionally, it must be noted that though the individual school boards are apparently free to adopt their own policies, including those dealing with pregnancy-related disabilities, they are related through the State Board of Education and its superintendent by operation of the Michigan Constitution, article 8, section 3. Not only does this make an ultimate unified result more likely but it provides support for the argument as to the identity of the defendants themselves.

As noted in an earlier opinion of this court, the continued reluctance of defendants to feel compelled to conform to various court decisions in this area of discrimination law, absent the force of *res judicata*, makes this case a particularly appropriate one for defendant class treatment. 71 F.R.D. at 409, n.20.

Therefore, it is the conclusion of this court that this suit shall continue as a class action with both plaintiff class and defendant class remaining certified.

### III. Preemption of the Elliot-Larsen Act by ERISA.

Defendants urge this court to dismiss the state claims against them, based on the

Elliot-Larsen Civil Rights Act, M.C.L.A. § 37.2101 *et seq.*, arguing that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001 *et seq.*, preempts the state act as it applies to employee benefit plans. ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the Act. 29 U.S.C.A. § 1144(a). There are certain statutory exceptions to this preemptive effort for state laws regulating insurance, banking and securities, 29 U.S.C.A. § 1144(b)(2)(A), and for any generally applicable state criminal law, 29 U.S.C.A. § 1144(b)(4). Further, the Act provides that nothing in the applicable "subchapter shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law." 29 U.S.C.A. § 1144(d).

■ The preemptive effect of a federal law over a state law is an area of complex federal interactions, interactions between state and national governments. The basis for this doctrine is the supremacy clause of the United States Constitution which establishes that document and the laws and treaties made pursuant to it as the supreme law of the land. U.S. Constitution, art. VI, cl. 2. While state law in direct conflict with federal law clearly should be identified and eliminated, *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941), preemption, absent a direct conflict, depends on the intent of Congress. *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1189, 55 L.Ed.2d 443 (1978).

In the instant case, there is no question that the challenged plan is a welfare benefit plan as covered by ERISA. 29 U.S.C.A. § 1003. Since ERISA contains no specific discrimination clause, there is no direct conflict with state laws. However, many courts have rejected the argument that ERISA was intended to preempt only state regulations that conflict with ERISA. *Bucyrus-Erie Co. v. Department of Industry, Labor and Human Relations*, 599 F.2d 205,

209 (7th Cir. 1979), *cert. denied*, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980); *Wadsworth v. Whaland*, 562 F.2d 70, 76–77 (1st Cir. 1977), *cert. denied*, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978); *Delta Air Lines, Inc. v. Kramarsky*, 485 F.Supp. 300, 305 (S.D.N.Y.1980); *Goodyear Tire & Rubber Co. v. Department of Industry, Labor and Human Relations*, 87 Wis.2d 56, 273 N.W.2d 786 (1978). The issue then becomes whether ERISA's general preemption mandate circumvents application of general state civil rights laws to covered benefit plans.

Despite the unambiguous language of ERISA, there has been great controversy over its impact on state civil rights laws. Hutchinson and Ifshin, "Federal Preemption of State Law under the Employees Retirement Income Security Act of 1974," *U.Chi.L.Rev.* 23, 52–58 (Fall 1978); *cf., Operating Engineers Local No. 428 Pension Trust Fund v. Zamborsky*, 650 F.2d 196 (9th Cir. 1981) (state garnishment laws are impliedly exempted from ERISA preemption). The courts that have addressed this issue are divided. *Compare Bucyrus-Erie Co. v. Department of Industry, Labor and Human Relations*, 599 F.2d 205 (7th Cir. 1979), *cert. denied*, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980) (rejecting preemption of state fair employment law as it applies to employee benefit plans) with *Pervel v. Connecticut Commission on Human Rights and Opportunities*, 468 F.Supp. 490 (D.Conn. 1978), *aff'd.* 603 F.2d 214 (2nd Cir. 1979), *cert. denied*, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980) (holding ERISA preempts Connecticut's fair employment law as it applies to benefit plans). The United States Supreme Court has not yet passed on this issue, denying writs of certiorari in *Bucyrus-Erie* and *Pervel* on the same day. After careful study, it is the opinion of this court that Congress did not intend to derail enforcement of state civil rights laws through the broad preemption of ERISA.

The court is convinced that *Bucyrus-Erie* is the proper interpretation of the intent of Congress in this matter. There the Court of Appeals for the Seventh Circuit found an

intent to except state fair employment laws from preemption, not through an implied exception, as found in *A T & T v. Merry*, 592 F.2d 118 (2nd Cir. 1979), but through the prohibition in section 514(d) against altering another federal law. *Bucyrus-Erie* held that Title VII of the Civil Rights Act of 1964 would be altered or impaired if state fair employment laws were not allowed to reach discrimination in the administration of benefit plans. The court rejected two cases holding to the contrary as construing "too narrowly the nature of the *federal* scheme embodied in Title VII." 599 F.2d at 210 (emphasis in original). The court noted that this federal scheme clearly contemplated and encouraged the use of state law to further its own objectives and designed its enforcement system assuming the existence of concurrent state enforcement. *Id.* at 211.

The legislative history of ERISA indicates that the enforcement of existing antidiscrimination laws, and specifically Title VII, was seen as a sufficient prohibition of discrimination, obviating any need for including such a prohibition in ERISA. The *Bucyrus-Erie* court found this to be an expressed intention by Congress to preserve the terms of the existing employment discrimination law, including state fair employment laws. 599 F.2d at 211–12.

Finally, as indicated by the Seventh Circuit, the legislative discussion of the Pregnancy Disability Act, P.L. 95–555, amending Title VII, points out that Congress was acting with the understanding that state laws prohibiting pregnancy discrimination were in full effect. In light of the primary application of these pregnancy clauses to benefit plans, this understanding is evidence that Congress intended to preserve state fair employment acts in this area.

Alternatively, defendants' motion for summary judgment as to the Elliot-Larsen claims must be denied because the welfare plans being challenged fall into a specific statutory exception of ERISA. The Act provides that governmental plans are not covered by ERISA; "governmental plan" means "a plan established or maintained for

its employees by ... the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C.A. § 1002(32). It is clear that a school district is considered to be an agency of the state. *NAACP v. Lansing Board of Education*, 429 F.Supp. 583, 617 (W.D.Mich.1976), *aff'd*, 559 F.2d 1042 (6th Cir. 1977), *cert. denied*, 434 U.S. 997, 98 S.Ct. 635, 54 L.Ed.2d 491 (1977), *aff'd*, 571 F.2d 582 (6th Cir. 1978), *cert. denied*, 438 U.S. 907, 98 S.Ct. 3126, 57 L.Ed.2d 1150 (1978) (a school board is a state body); *Attorney General ex rel. Kies v. Lowrey*, 131 Mich. 639, 643–44, 92 N.W. 289 (1902), *aff'd*, 199 U.S. 233, 26 S.Ct. 27, 50 L.Ed. 167 (1905) (a school district is a state agency); *accord, Lafayette Steel Co. v. City of Dearborn*, 360 F.Supp. 1127, 1130 (E.D.Mich.1973) (a school district is a municipal corporation); *Hall v. Ira Township*, 348 Mich. 402, 405, 83 N.W.2d 443 (1957) (a school district is a municipal corporation). The fact that the benefit plan may have been entered into as a result of collective bargaining and that it may be administered by trustees does not mean that the plan is not a government plan. *Feinstein v. Lewis*, 477 F.Supp. 1256 (S.D.N.Y.1979), *aff'd*, 622 F.2d 573 (2nd Cir. 1980); *ERISA* Op. Letter No. 79–83 (1979).

■ Therefore, it is the holding of this court that ERISA was not intended to preempt enforcement of state laws forbidding discrimination, or, alternatively, that it does not preempt the enforcement of state fair employment acts as they are applied to employees of school districts.

## IV. One Object Requirement of the Michigan Constitution.

Defendants also seek summary judgment on the state law claim on the basis that the Elliot-Larsen Civil Rights Act is unconstitutional for violating the prohibition of Michigan Constitution, Article 4, section 24, against having a statute with more than one object.

This limitation on legislation has been a part of the Michigan Constitution for many years and is intended to provide legislators

and individuals notice of the content of bills prior and subsequent to enactment. *Maki v. City of East Tawas*, 385 Mich. 151, 157, 188 N.W.2d 593 (1971). The provision was designed to prevent corruption and logrolling legislation by which practice inapplicable sections would be included in a bill in order to secure someone's favor or some legislator's support. *Advisory Opinion on the Constitutionality of 1975 P.A. 227*, 396 Mich. 123, 130, 240 N.W.2d 193, supplemented by, 396 Mich. 465, 242 N.W.2d 3 (1976), citing *People v. Collins*, 3 Mich. 343, 384 (1954).

Defendants argue that this civil rights act has three distinct objects:

(1) to prohibit discriminatory practices, policies and customs in the exercise of those rights based upon religion, race, color, national origin, age, sex, height, weight and marital status;

(2) to limit the use of polygraph, psychological stress evaluation, or similar tests in certain employment situations; and

(3) to preserve the confidentiality of records regarding arrest, detention, or other disposition in which a conviction does not result (Defendants' Motion for Partial Summary Judgment, p. 36).

It is the court's opinion, however, that defendants have misconstrued both the scope of article 4, section 24, and the structure of Elliot-Larsen. There certainly is no suggestion anywhere that this legislation was foisted on an unsuspecting state legislature by a lack of notice. The second "object" was, in fact, added by amendment to the original act. Further, the legislators are aware of constitutional requirements and are sworn to uphold them. "[A]ll possible presumptions should be afforded to find constitutionality." *Advisory Opinion on the Constitutionality of 1972 P.A. 294*, 389 Mich. 441, 464, 208 N.W.2d 469 (1973). "[T]he goal is notice, not restriction of legislation." *Id.* 467, 208 N.W.2d 469. Though an object cannot be phrased in such a broad manner so as to effectively circumvent the constitutional requirement, it is not fatal to the statute to have a general purpose or aim

that is implemented through a number of specific statutory provisions. This is clear from the Supreme Court of Michigan's discussion regarding 1972 P.A. 294 in which the court upheld the Insurance Code though it dealt with several different and distinct aspects of insurance and surety law. The court pointed out that, if too strict a reading was given article 4, section 24, no codes enacted in Michigan would be constitutional. 389 Mich. at 463, 208 N.W.2d 469. The Uniform Commercial Code is a good example of a legislative enactment with many autonomous aspects supporting a general single object.

This leads to a discussion of the Elliot-Larsen Civil Rights Act itself. This act is composed of eight articles with forty-nine sections. Its general object is to define and protect certain civil rights of individuals under the jurisdiction of Michigan law. It defines civil rights in four transactional areas: employment (article 2), public accommodations (article 3), educational institutions (article 4), and real estate transactions (article 5). The remainder of the Act includes general definitions, remedies and the establishment of a commission charged with enforcing the Act. One of those areas, employment practices, contains the provisions that defendants claim give rise to the improper multiple purposes. All the provisions relate to the employment relationship and must be read as part of the effort to protect the civil rights of individuals. The court rejects defendants' attempt to lift the second and third "objects" out of the employment context in an attempt to discern multiple objects in the Act. This is clearly a distortion of the statutory scheme of the Act and . is an invalid characterization. *Contra, Seals v. Henry Ford Hospital*, No. 79–916900 (Wayne County Circuit Court, March 2, 1981).

Therefore, defendants' motion for summary judgment on the basis of the unconstitutionality of the Elliot-Larsen Civil Rights Act under article 4, section 24 of the Michigan Constitution is denied.

*V. Abstention.*

Defendants argue in their motion for summary judgment that the district court should abstain from deciding any question of liability under the Elliot-Larsen Act. Their position is that the reach of this statute is uncertain since the Supreme Court of Michigan has not yet decided the statutory meaning of sex discrimination and any decision by this court would unnecessarily interfere with the administration by the state of its own affairs.

The abstention doctrine which defendants would have this court apply actually exists in several distinct forms, varying in rationale and application. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 801–17, 96 S.Ct. 1236, 1238–1246, 47 L.Ed.2d 483 (1976); *Hanna v. Toner*, 630 F.2d 442 (6th Cir. 1980). It is also clear that any form of abstention is only to be applied in unusual circumstances. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District v. United States*, 424 U.S. at 813, 96 S.Ct. at 1244. *See, County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–1063, 3 L.Ed.2d 1163 (1959).

The first of these abstention doctrines is commonly referred to as the *Pullman* doctrine and calls for the federal court to refrain from passing constitutional judgment on a state law where the meaning of that state law is unsettled and may be interpreted by state courts in such a way that purges any constitutional defects. The federal court retains jurisdiction while a state court makes its determination. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). This doctrine is clearly not applicable to the case presently under consideration since the federal claim is principally one of statutory interpretation and does not involve a constitutional challenge to the state statute.

The other principal form of abstention, often referred to as "Our Federalism,"[1] is based on the case of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and applies to that narrow circumstance where the federal plaintiff seeks to challenge pending and ongoing state criminal enforcement actions on grounds other than bad faith, harassment or an obviously invalid state statute. *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), cited by the defendants in support of their position, falls within this line of cases. The Supreme Court in *Juidice* extended coverage of *Younger* to include pending civil enforcement actions as well as criminal prosecutions. Termed "noninterference,"[2] as opposed to the more discretionary forms of abstention, this form of abstention has no place in the consideration of the issues before this court since there is no state enforcement action being challenged.

Another form of abstention in federal court occurs when there is a similar action pending in state court. Though abstention is not required, it is justified on the basis of convenience for the federal court in avoiding duplicative litigation. While not referring to this action as "abstention," the Supreme Court in *Colorado River* discussed and approved its use. 424 U.S. at 817–18, 96 S.Ct. at 1246. This would usually result in a stay of the federal proceedings, though a dismissal was held to be proper in *Colorado River*. *See also*, Wright and Miller, *Federal Practice and Procedure*, § 4247. It is clear in the case *sub judice* that no state court has before it the controversies and the parties involved in this dispute.

The final varieties of abstention are not as clear either in their scope or in their relationship. Abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose im-

---

1. This term was used by Justice Black in *Younger v. Harris*, in which he delivered the opinion of the Supreme Court. 401 U.S. 37, 44–45, 91 S.Ct. 746, 750–751, 27 L.Ed.2d 669 (1971).

2. Gerald Gunther, *Constitutional Law* (9th ed. 1975), p. 1610.

portance transcends the result in the case then at bar. . . . It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." 424 U.S. at 814–15, 96 S.Ct. at 1244–1245. Though the defendants refer the court to this language (Defendants' Motion for Partial Summary Judgment, p. 30), this particular ground for abstention is inapplicable to the present case because its rationale is to avoid needless conflict with the administration by a state of its own affairs. More clearly stated, the federal court's use of this doctrine is to avoid disruption of state administrative processes, *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 180, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959) (referring to *Burford* abstention) and to avoid interference with state policy decisions, especially where there is an established state administrative review procedure. *Colorado River Water Conservation District v. United States*, 424 U.S. at 814–16, 96 S.Ct. at 1244–1245. The fear is that some state administrative schemes would be hopelessly muddled by the interference of an additional, federal tribunal. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (review of reasonableness of drilling permit would have "impermissibly" disrupted state management of oil fields); *Alabama Public Service Commission v. Southern Railway*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) (state regulation of intrastate railroad passenger service).

■ What is involved in the present case is not an administrative decision but the application of a state statute by a federal court under its pendent jurisdiction. *Burford* and its progeny do not compel this court to abstain from considering the state claim.

There has been some recognition of abstention in private litigation when the federal court is confronted with a difficult question of state law. *See*, Wright and Miller, *Federal Practice and Procedure* § 4246. This, clearly, must be the doctrine that defendants call on this court to implement. However, at least two reasons lead

this court to deny abstention on this final theory. The first is that, though the Supreme Court of Michigan has not yet passed on the precise issue of whether discrimination on the basis of pregnancy-related disabilities was included in the statutory prohibition against sex discrimination prior to the clarifying amendments, lower Michigan courts have addressed this issue. *See, Michigan Department of Civil Rights v. Michigan Department of Civil Service*, No. 44973 (Nov. 4, 1980). The fact that there may be an argument as to an alternative interpretation of the statute that may, at some time, be raised and resolved before the state supreme court does not, by itself, make this a difficult question of state law. Further, to hold that a federal court should generally abstain from considering state law issues because that precise issue has not yet been decided by the highest possible state court would do serious damage to consideration in federal forums of state claims through pendent jurisdiction and diversity jurisdiction. There must be some additional compelling circumstances presented to the court before it should defer such state law questions. This the defendants have failed to show.

It should also be pointed out that even a cursory reading of *United States v. Ohio*, 614 F.2d 101 (6th Cir. 1979), cited by the defendants as compelling abstention in this case, reveals that the Court of Appeals ruled specifically on the basis of *Pullman* and *Younger*. It is, therefore, inapplicable to the present case.

Therefore, this court declines to abstain from dealing with this state law claim.

## VI. Elliot-Larsen Civil Rights Act.

Plaintiffs have moved this court to hold defendants liable, as a matter of law, under the Elliot-Larsen Act. However, during oral arguments it became clear that there may be factual disputes present such that summary judgment under Federal Rule of Civil Procedure 56 would be inappropriate. Counsel for plaintiffs agreed to review her statements of facts contained in the summary judgment pleadings and determine if

any of the apparent differences can be resolved. As this opinion was being completed, plaintiffs filed a supplemental statement of uncontested facts in support of plaintiffs' motion for partial summary judgment. Rather than delay this entire opinion while the court reviews the pleadings and affidavits in this matter, the court will continue this aspect of the motion under advisement.

## VII. Title VII.

Plaintiffs also moved for summary judgment as to defendants' liability under Title VII of the Civil Rights Act of 1964. For the same reasons as those stated in the preceding section, this matter will continue under advisement.

## VIII. Separate Trials on Liability and Remedies.

Finally, it is the opinion of this court that this action should proceed to trial with the matters of liability and of remedies to be considered separately. Federal Rule of Civil Procedure 42(b) gives the district court discretion to order such separate trials if such an arrangement will be convenient or will be conducive to expedition and economy. This action still involves a class of plaintiffs and a class of defendants, and this court deems it to be convenient to deal separately with liability and individual remedy issues. If plaintiffs would prevail on the liability stage, there would be greater likelihood of negotiated remedies. The court would further consider the use of masters in the remedy proceedings. Further, if the plaintiffs would not prevail, this decision will avoid protracted factfinding on the issues of individual damages and remedies that will be otherwise necessary.

It is the recollection of this court that the bifurcation was brought up at an earlier point in this litigation. This opinion will serve to formalize any earlier decision or agreement in this matter.